IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

SCARLETT PAVLOVICH,
     *Plaintiff*,

    v.

AMANDA PALMER,
     *Defendant*.

No.  1:25-cv-10263-NMG

**DEFENDANT AMANDA PALMER'S MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS COUNTS 1 THROUGH 4 OF
PLAINTIFF SCARLETT PAVLOVICH'S COMPLAINT BECAUSE
THE TRAFFICKING VICTIMS PROTECTION ACT DOES NOT APPLY
<u>EXTRATERRITORIALLY TO THE ALLEGED CONDUCT IN NEW ZEALAND</u>**

Daniel N. Marx, Esq. (BBO#674523)
William W. Fick, Esq. (BBO#650562)
Amy Barsky, Esq. (BBO#601111)
FICK & MARX LLP
24 Federal Street, 4th Floor
Boston, MA 02110
(857) 321-8360
DMARX@FICKMARX.COM
WFICK@FICKMARX.COM
ABARSKY@FICKMARX.COM

Dated: April 21, 2025

## <u>TABLE OF CONTENTS</u>

Introduction ........................................................................................................................... 1

Background .......................................................................................................................... 1

Argument ............................................................................................................................. 2

I.      Legal Framework ...................................................................................................... 2

II.     The TPVA does not expressly provide for the extraterritorial application of its civil
        remedies provision. ................................................................................................... 4

III.    Congress has given no clear, affirmative indication that intended the TVPA's civil remedies
        provision to reach alleged foreign conduct. .............................................................. 5

IV.     Applying the two-step process from *RJR Nabisco*, other courts have rejected similar civil
        TVPA claims arising from alleged foreign conduct. .................................................. 8

Conclusion ......................................................................................................................... 12

Certificate of Service ......................................................................................................... 13

## INTRODUCTION

Plaintiff Scarlett Pavlovich claims Neil Gaiman, who is not a party to this case, sexually assaulted her in New Zealand, where she briefly worked as a babysitter for Gaiman and Defendant Amanda Palmer in early 2022. On that basis, Plaintiff improperly asserts four federal claims *against Mrs. Palmer* under the Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. § 1581 *et seq.* As discussed elsewhere, the claims that Ms. Palmer engaged in "sex trafficking" of Plaintiff or obtained "forced labor" from her are baseless and offensive. Regardless, even if those claims had any merit, they would not be the types of statutory claims that Congress intended to have litigated in federal courts when it enacted the TVPA. The civil remedies provision of the TVPA was never meant to transform local police matters and employment disputes between foreign parties from around the world into the subjects of federal court litigation in the United States.

## BACKGROUND

In her misguided effort to hold Ms. Palmer legally responsible for Gaiman's alleged conduct in New Zealand, Plaintiff asserts four civil claims under § 1595(a) of the TVPA for purported violations of § 1591 ("sex trafficking") (Count 1), § 1589 ("forced labor") (Count 2); § 1590 ("trafficking for peonage, slavery, indentured servitude, or forced labor") (Count 3); and § 1594 (conspiracy) (Count 4). She asserts those statutory claims under U.S. law even though she is a citizen of New Zealand, Gaiman is a citizen of the United Kingdom, and all the alleged events in this case—including the alleged assaults—occurred in New Zealand. Although Mrs. Palmer is a citizen of the United States and current resident of Massachusetts, she also resided at all relevant times in New Zealand, where she neither worked for the United States or lived within its special jurisdiction (*e.g.*, at an embassy facility or in other government housing).

## ARGUMENT

Because the TVPA does not expressly provide for the extraterritorial application of its civil remedy provision, *see* 18 U.S.C. § 1595 (providing for civil remedies) and § 1596 (providing for limited extraterritorial jurisdiction but not referencing § 1595), and because Congress has made no clear, affirmative statement that it intends the TVPA to provide a sweeping private cause of action for foreign plaintiffs to bring civil actions in U.S. courts concerning alleged sexual assaults or employment disputes in foreign countries, Plaintiff's TVPA claims should be dismissed.

**I.      Legal Framework**

"Courts presume that federal statutes 'apply only within the territorial jurisdiction of the United States.'" *WesternGeco LLC v. ION Geophysical Corp.*, 585 U.S. 407, 412 (2018) (quoting *Foley Bros. v. Filardo*, 336 U.S. 281, 285 (1949)); *see Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 454 (2007) ("United States law governs domestically but does not rule the world."). "This rule, commonly called the presumption against extraterritoriality, is a 'canon of construction' that guides [the] interpretation of federal statutes." *Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc.*, 91 F.4th 511, 518 (1st Cir. 2024) (citing *Yegiazaryan v. Smagin*, 599 U.S. 533, 541 (2023)); *see Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 255 (2010) (explaining question is not whether courts think "Congress would have wanted" statute to apply to foreign conduct "if it had thought of the situation [in a particular case]," but whether Congress has "affirmatively and unmistakably instructed that the statute will do so").

The presumption against the extraterritorial application of federal statutes, such as the TVPA, "reflects concerns of international comity insofar as it 'serves to protect against unintended clashes between our laws and those of other nations which could result in international discord.'" *Estados Unidos Mexicanos*, 91 F.4th at 518 (quoting *Kiobel v. Royal Dutch Petro. Co.*, 569 U.S. 108, 115 (2013)). It also "embodies 'the commonsense notion that Congress generally legislates

with domestic concerns in mind.'" *Id.* (quoting *Smith v. United States*, 507 U.S. 197, 204 n.5 (1993)). Thus, federal courts "construe federal laws 'to have only domestic application' unless [they] find 'clearly expressed congressional intent to the contrary.'" *Id.* (quoting *RJR Nabisco, Inc. v. European Cmty.*, 579 U.S. 325, 335 (2016)); *see Morrison*, 561 U.S. at 335 ("When a statute gives no clear indication of an extraterritorial application, it has none.").

*RJR Nabisco, Inc. v. European Community*, 579 U.S. 325 (2016), a civil RICO case concerning foreign conduct, provides the applicable legal framework for assessing the extraterritorial application of a particular statute. In that case, the European Community alleged RJR Nabisco "participated in a global money-laundering scheme in association with various organized crime groups." *Id.* at 332. The "pattern of racketeering activity" included "money laundering, material support for foreign terrorist organizations, mail fraud, wire fraud, and violations of the Travel Act." *Id.* To answer "the question of RICO's extraterritorial application," the Supreme Court first considered whether RICO's criminal prohibitions (18 U.S.C. § 1962) apply to conduct in foreign countries, and it then considered whether its civil remedies (*id.* §1964(c)) authorize private plaintiffs to bring civil actions seeking damages for their alleged injuries caused by violations of the criminal prohibitions in foreign countries.

Carefully parsing RICO's statutory provisions, the Supreme Court held that § 1962 applies to foreign racketeering activity "but only to [an] extent"—that is, RICO's criminal prohibitions reach abroad only when the predicate offenses involve foreign conduct, such as international money laundering or assassinating government officials in foreign countries. *Id.* at 338-39; *see id.* (clarifying that "[t]he inclusion of *some* extraterritorial predicates does not mean that *all* RICO predicates extend to foreign conduct" and "emphasiz[ing]" that "important limitation" to RICO's extraterritorial reach) (emphasis in original). Turning to the private right of action, the Supreme

Court concluded: "Irrespective of any extraterritorial application of § 1962, . . . § 1964(c) does not overcome the presumption against extraterritoriality." *Id.* at 346; *see id.* at 349 ("Nothing in 1964(c) provides a clear indication that Congress intended to create a private right of action for injuries suffered outside of the United States."). It held that to state a viable civil RICO claim, a plaintiff must adequately allege a "*domestic* injury." *Id.* at 346 (emphasis in original).

As the Supreme Court explained, the extraterritorial application of federal statutes that authorize *private claims* (*i.e.*, private rights of action) raises even more serious concerns about foreign policy and international comity than the extraterritorial application of laws that establish *criminal penalties*.

> "The creation of a private right of action raises issues beyond the mere consideration whether underlying primary conduct should be allowed or not, entailing, for example, a decision to permit enforcement without the check imposed by prosecutorial discretion." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 727 (2004). Thus, as we have observed in other contexts, providing a private civil remedy for foreign conduct creates a potential for international friction beyond that presented by merely applying U.S. substantive law to that foreign conduct. *See, e.g.*, *Koibel*, [569 U.S.] at 117 ("Each of th[e] decisions" involved in defining a cause of action based on "conduct within the territory of another sovereign" "carries with it significant foreign policy implications").

*Id.* at 347; *see id.* at 348 (recognizing "potential for international controversy that militates against recognizing foreign-injury claims without clear direction from Congress").

## II.    The TPVA does not expressly provide for the extraterritorial application of its civil remedies provision.

Sections 1589 and 1591 of Title 18 establish criminal prohibitions on "forced labor" and "sex trafficking," respectively. 18 U.S.C. §§ 1589, 1591.

Section 1595, titled "Civil Remedy," provides a private cause of action for an individual who is made to provide forced labor in violation of section 1589 or is a victim of sex trafficking in violation of section 1591.

> An individual who is a victim of a violation of this chapter [18 U.S.C. § 1581 *et seq.*] may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter [18 U.S.C. § 1581 *et seq.*] in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a).

Section 1596 provides for extraterritorial jurisdiction for "certain trafficking offenses."

> In addition to any domestic or extra-territorial jurisdiction otherwise provided by law, the courts of the United States have extra-territorial jurisdiction over any offense (or any attempt or conspiracy to commit an offense) under section 1581, 1583, 1584, 1589, 1590, or 1591.

*Id.* § 1596(a). By its terms, that extraterritorial jurisdiction provision references the various criminal prohibitions against peonage, slavery, involuntary servitude, forced labor, and sex trafficking, but it does not reference § 1595, the civil remedy provision.

Indeed, nothing in the TVPA expressly provides that, under section 1595, a private plaintiff may bring a civil action for violations of the criminal prohibitions arising from alleged conduct between foreign individuals in foreign countries.

## III. Congress has given no clear, affirmative indication that intended the TVPA's civil remedies provision to reach alleged foreign conduct.

Because the TVPA does not expressly provide for the extraterritorial application of its civil remedies provision, Plaintiff must prove that Congress nevertheless intended to open U.S. courts to private plaintiffs from around the world.

Under the *RJR Nabisco* framework, Plaintiff must show that Congress intended to authorize a citizen of New Zealand to sue a citizen of the United Kingdom for an alleged sexual assault in New Zealand in a federal court in the United States. *See Estados Unidos Mexicanos*, 91 F.4th at 519 (following *RJR Nabisco* and applying its "two-step process"). At the first step, the

question is "whether the statute gives a clear, affirmative indication that it applies extraterritorially." *RJR Nabisco, Inc.*, 579 U.S. at 337. If not, at the second step, the question is whether "the case involves a domestic application of the statute." *Id.* This process applies "regardless of whether the statute in question regulates conduct, affords relief, or merely confers jurisdiction." *Id.* at 337.

Plaintiff does not contend, nor could she show, that at the "second step," her civil claims involve a "domestic application" of the TVPA. *See Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 600 U.S. 412, 418 (2023) ("[T]o prove that a claim involves a domestic application of a statute, plaintiff must establish that the *conduct relevant to the statute's focus* occurred in the United States.") (emphasis in original). In this case, the Complaint only alleges actions taken and injuries suffered in New Zealand, not in the United States.[1] Thus, at the "first step," she must prove the TVPA provides a "clear, affirmative indication" that Congress intended the statute's civil remedies provision (18 U.S.C. § 1595) to authorize private claims concerning alleged violations in foreign countries. Because Congress made no such "unmistakabl[e]" statement, *Morrison*, 561 U.S. at 255, Plaintiff's TVPA claims (Counts 1 through 4) must be dismissed.

As with all exercises in statutory interpretation, analyzing the presumption against extraterritorial application of any particular federal statute must start with the text of the statute itself. *See generally Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*, 583 U.S. 366, 378 (2018) (statutory interpretation "begins with the text" and "look[s] to both 'the language itself [and] the specific context in which the language is used") (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337,

---

[1] To be clear, all the claims in this case arise from alleged events that occurred in—and only in—New Zealand. Plaintiff does not allege, for example, that she was "trafficked" across any international border or that any "transnational" conduct violated the TVPA, much less that anything at all occurred in the United States.

341 (1997)). Here, as noted above, *see* Argument, Part II *supra*, the civil-remedies provision of the TVPA "says nothing about extraterritorial application," and "[t]hus, standing alone, it does nothing to rebut the rebut the presumption that it applies only domestically." *Doe v. Apple, Inc.*, No. 1:19-cv-03737 (CJN), 2021 U.S. Dist. LEXIS 237710, *39 (D.D.C. Nov. 2, 2021) (citing *Doe v. Nestle USA, S.A.*, 929 F.3d 623, 632-34 (9th Cir. 2021)). By its notable silence, § 1595 speaks volumes about it limited application to domestic concerns.

Nor does the broader statutory context of the TVPA alter this straightforward analysis. Although § 1596 "grants extraterritorial application to many criminal statutes," such as § 1589, § 1590, and § 1591, "it does not mention their civil analogue, § 1595." *Doe v. Apple, Inc.*, 2021 U.S. Dist. LEXIS 237710, at *40. Instead, the text and structure of § 1596 confirm that Congress was "focused on criminal, not civil, applications" of the TPVA. *Id.* (explaining "criminal focus" of § 1596, which "makes no mention of civil suits"). Indeed, that extraterritorial-jurisdiction provision expressly applies only to "certain trafficking offenses," referring the criminal prohibitions in the referenced sections.

Like RICO, the TVPA both establishes criminal prohibitions and provides civil remedies. Focusing on the specific claims asserted in this case, § 1589 prohibits "forced labor"; § 1590 prohibits "trafficking with respect to peonage, slavery, involuntary servitude, or forced labor"; § 1591 prohibits "sex trafficking of children or by force, fraud or coercion"; and § 1594 prohibits attempting or conspiring to violate §§ 1589, 1590, 1591 and other sections not relevant here. These substantive provisions, which Congress enacted in 2000 as part of the original version of the TVPA, establish federal crimes and authorize severe punishments, including lengthy terms of incarceration. *See, e.g.*, *id.* § 1589(d) (setting maximum sentence of life imprisonment based on aggravating factors). In addition to these criminal prohibitions, § 1595, which Congress added in

2003, provides for civil remedies, permitting "[a]n individual who is a victim of a violation of this chapter [18 U.S.C. § 1581 *et seq*.]" to bring a civil action against the primary perpetrator and, in certain limited circumstances, a secondary beneficiary. Finally, § 1596, which Congress added in 2008, provides "[a]dditional jurisdiction in certain trafficking offenses." It states that federal courts have "extra-territorial jurisdiction over any offense (or any attempt or conspiracy to commit any offense) under section . . . 1589, 1590, or 1591," if the alleged offender is a U.S. national of or present in this country.

"When a statute provides for some extraterritorial application, the presumption against extraterritoriality operates to limit that provision to its terms." *Morrison*, 561 U.S. at 265. Here, Congress repeatedly amended the TVPA, and it "could have easily included § 1595 in § 1596, but it did not." *Doe*, 2021 U.S. Dist. LEXIS 237710, at *40. The conspicuous omission of the civil-remedies provision from the extraterritorial-jurisdiction provision is hardly consistent with a "clear, affirmative indication" that Congress intended the TVPA's private right of action to reach alleged foreign actions or injuries. *RJR Nabisco*, 579 U.S. at 337.

**IV.  Applying the two-step process from *RJR Nabisco*, other courts have rejected similar civil TVPA claims arising from alleged foreign conduct.**

Only a handful of cases have addressed the extraterritorial application of the TVPA's civil-remedies provision, perhaps because few plaintiffs have attempted to sue in federal courts for sexual assaults and employment disputes that occurred in foreign countries. At least two recent decisions have dismissed civil claims against U.S. companies regarding alleged forced labor in foreign countries, ruling that the plaintiffs failed to overcome the presumption against the extraterritorial application of § 1595. *See Mia v. Kimberly-Clark Corp.*, No. 1:22-cv-02353 (CJN), 2025 U.S. Dist. LEXIS 42876 (D.D.C. Mar. 10, 2025) (dismissing civil TVPA claims); *Doe v. Apple, Inc.*, No. 1:19-cv-03737 (CJN), 2021 U.S. Dist. LEXIS 237710 (D.D.C. Nov. 2, 2021)

(same); *but see United States ex rel. Hawkins v. ManTech Int'l Corp.*, 752 F. Supp. 3d 118 (D.D.C. 2024); *Abernathy v. Carlyle Grp., Inc.*, No. 22-cv-3602 (ABJ), 2024 U.S. Dist. LEXIS 237526 (D.D.C. Sept. 27, 2024) (companion case to *Hawkins*). Among the conflicting authorities, they are the better reasoned and more analogous decisions, and this Court should follow them.

*Doe v. Apple* applied the extraterritoriality framework from *RJR Nabisco* and dismissed civil TVPA claims concerning forced labor in the Democratic Republic of Congo. The plaintiffs included children who suffered terrible injuries and parents of children who died while digging in foreign mines for cobalt to be used by U.S. companies in smart phones, electric cars and other devices. The plaintiffs sought to hold the defendants, including Apple, Microsoft, and Tesla, liable for knowingly obtaining financial benefits from unlawful forced labor. The court dismissed their § 1595 claims on the ground that Congress did not clearly indicate that the TVPA's civil remedies reach the alleged conduct in the Congo.

> It . . . seems likely that when in § 1596(a), Congress granted extraterritorial jurisdiction over "any offense (or any attempt or conspiracy to commit an offense) under section, 1581, 1583, 1584, 1589, 1590, or 1591," its omission of § 1595 was not mistaken, but was an intentional decision not to extend extraterritorially the reach of the statute's civil component. It is not for this Court to question that decision; especially as grants of extraterritorial jurisdiction are fraught with international-relations considerations, ones far outside the judicial role.

*Id.* at *41-42 (citing *RJR Nabisco*, 579 U.S. at 347-48).[2] This Court should reach the same conclusion here, and on that basis, Plaintiff's TVPA claims should be dismissed.

---

[2] The D.C. Circuit affirmed the dismissal of the TVPA claims in *Doe*, holding the plaintiffs failed to adequately allege plausible claims that the defendants knowingly benefited from their participation in a venture that involved forced labor, and without deciding whether § 1595 applies to alleged foreign conduct that caused foreign injuries. *See Doe v. Apple, Inc.*, 96 F.4th 403, 414-16 (D.C. Cir. 2024). Since then, the district courts in the D.C. Circuit have issued conflicting decisions. *Compare Mia v. Kimberly-Clark Corp.*, No. 1:22-cv-02353 (CJN), 2025 U.S. Dist. LEXIS 42876 (D.D.C. Mar. 10, 2025) (following *Doe* and granting motion to dismiss), *with United*

*Roe v. Howard*, 917 F.3d 229 (4th Cir. 2019), the only appellate decision to address this issue, arose in a different procedural posture, involved distinguishable facts, and arguably misapplied the framework from *RJR Nabisco*. On appeal after trial, the Fourth Circuit affirmed a civil judgment for the plaintiff, Roe, who was repeatedly raped in Yemen by the defendant's late husband. The evidence established that the defendant and her husband worked at the U.S. embassy, that the plaintiff worked as their housekeeper, and that she lived with them both in their home, which the State Department provided. It further established that the husband "continually raped and sexually assaulted" the plaintiff "throughout the duration of her time" with the family, and that the defendant was "aware of these assaults" and complicit in them. *Id.*[3]

Regarding the extraterritorial application of the TVPA, the Fourth Circuit issued a fractured decision. Considering each statutory provision independently, it held that § 1591, which expressly reaches "conduct committed 'within the special maritime and territorial jurisdiction of the United States,'" applied to the defendant's conduct in Yemen, because "[the defendant]'s part in Roe's abuse occurred entirely" on the U.S. embassy grounds or in government housing, which are special premises that "undoubtedly fall within the 'special maritime and territorial jurisdiction of the

———————————

*States ex rel. Hawkins v. ManTech Int'l Corp.*, No. 15-cv-2015 (ABJ), 2024 U.S. Dist. LEXIS 175317 (D.D.C. Sept. 27, 2024) (rejecting *Doe* and denying motion to dismiss).

[3] For example, the trial evidence established the following grim facts. When the plaintiff was hired for the "live-in position," the defendant said, "the main part of the job is to make [my husband] happy," and the plaintiff understood that to include doing whatever "was going to make him happy." *Roe*, 917 F.3d at 235. When the plaintiff started work, the defendant provided her with a "uniform" that consisted of "a 'very short' skirt and a blouse that 'looked like something you would wear . . . when you go out." *Id.* The defendant saw her husband "touch[ the plaintiff]'s rear end and breasts," and he told her about "the rapes." *Id.* On one occasion, he even called the defendant from a doctor's office where he had taken the plaintiff to have a contraceptive device implanted. *Id.* The evidence also established that another live-in housekeeper, Doe, later suffered similar sexual abuse in which the defendant had been complicit. *Id.* at 246 (holding evidence was admissible under Fed. R. Evid. 404(b)). In her testimony, Doe described the defendant's "knowledge and facilitation of [her husband]'s repeated sexual assaults." *Id.*

United States." 18 U.S.C. § 7(9). In contrast, the appeals court held that §§ 1589 and 1590 do *not* "directly refer to foreign conduct" but that since the 2006 amendments to the TVPA, those sections have expressly applied to "extraterritorial acts committed by United States employees," such as the defendant, who worked in the U.S. embassy. *Id.* at 244 (citing 18 U.S.C. § 3271). Meanwhile, the appeals court did not decide whether § 1594, the conspiracy provision, applies to foreign conduct because it was "reasonably certain" that the jury could have awarded the same damages even without that count.

To the extent *Roe* held that some of these substantive provisions of the TVPA applied to the defendant's abusive conduct in Yemen, because the defendant was a U.S. government employee and her conduct occurred on U.S. embassy grounds, its reasoning has no bearing on this case. *See United States ex rel. Fadlalla v. Dyncorp Int'l LLC*, 402 F. Supp. 3d 162, 198-99 (D. Md. 2019) (identifying but not deciding issue regarding extraterritorial application of § 1595 and reading *Roe* to have held that "the remedy provision applied to the claims against the defendant" because she was "a State Department employee who violated the TVPRA overseas") (citing § 3271). Put another way, *Roe* did not hold, or even suggest, that Congress broadly intended to authorize worldwide causes of action for private plaintiffs in factually distinguishable cases like this one, where the alleged foreign conduct all occurred in a private home, the defendant was not a U.S. government employee or contractor, and the primary perpetrator was not even a U.S. national. *See generally Compania de Inversiones Mercantiles S.A. v. Grupo Cementos de Chihuana S.A.B. de C.V.*, 58 F.4th 429, 492 (10th Cir. 2023) ("Comity considerations are at their apex when . . . there is no United States involvement.").[4]

---

[4] Notably, *United States ex rel. Hawkins v. MantTech International Corp.*, which followed *Roe v. Howard* rather than *Doe v. Apple, Inc.*, also involved civil TVPA claims against U.S.

Further, and of particular importance here, the Fourth Circuit held that § 1595 provided an extraterritorial private cause of action under the TVPA for violations of §§ 1589, 1590, and 1591, because those "predicates" themselves reached criminal conduct in foreign countries. In reaching that conclusion, the court erroneously focused on the criminal predicates (which expressly reach foreign conduct) rather than the civil remedies (which do not), failed to give sufficient weight to the strong presumption against extraterritoriality, and mistook one possible judicial interpretation of the TVPA for a clear, affirmative indication of congressional intent.

*Roe* also disregarded a core concern of *RJR Nabisco*—that is, the creation of a private cause of action for foreign plaintiffs concerning foreign conduct risks especially sensitive foreign-policy and comity problems. In such circumstances, "the need to enforce the presumption [against extraterritoriality] is at is apex," *RJR Nabisco*, 579 U.S. at 348, and thus, federal courts must tread with particular caution when interpreting federal statutes that do not expressly provide for extraterritorial civil remedies. *See, e.g.*, *Dandong Old North-East Agric. & Animal Husbandry Co. v. Hu*, No. 15-cv-10015 (KPF), 2017 U.S. Dist. LEXIS 122471, *36-37 (S.D.N.Y. Aug. 3, 2017) (following *RJR Nabisco* and dismissing civil RICO claim concerning alleged injuries in China) ("The *RJR Nabisco* Court premised its decision in substantial part on the risks of 'international friction' associated with allowing foreign entities [or individuals] to 'bypass' potentially 'less generous remedial schemes' available in their home jurisdictions and pursue treble damages for injuries suffered abroad through civil RICO actions in the United States.").

## **CONCLUSION**

For the foregoing reasons, this Court should dismiss Counts 1 through 4 of the Complaint.

---

employees and contractors, a special class of defendants who are expressly within the statutory scope. *See* 18 U.S.C. § 3271.

Respectfully submitted,

**AMANDA PALMER**

By her attorneys,

/s/ Daniel N. Marx
Daniel N. Marx, Esq. (BBO#674523)
William W. Fick, Esq. (BBO#650562)
Amy Barsky, Esq. (BBO#601111)
FICK & MARX LLP
24 Federal Street, 4th Floor
Boston, MA 02110
(857) 321-8360
DMARX@FICKMARX.COM
WFICK@FICKMARX.COM
ABARSKY@FICKMARX.COM

Dated: April 21, 2025

## CERTIFICATE OF SERVICE

I certify that this document and any attachments filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on April 21, 2025.

/s/ Daniel N. Marx
Daniel N. Marx