IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SCARLETT PAVLOVICH,<br>　　*Plaintiff*,<br><br>　　v.<br><br>AMANDA PALMER,<br>　　*Defendant*. | No.  1:25-cv-10263-NMG |

**DEFENDANT AMANDA PALMER'S MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS PLAINTIFF SCARLETT PAVLOVICH'S COMPLAINT
ON THE BASIS OF *FORUM NON CONVENIENS*** 

Daniel N. Marx, Esq. (BBO#674523)
William W. Fick, Esq. (BBO #650562)
Amy Barsky, Esq. (BBO#601111)
FICK & MARX LLP
24 Federal Street, 4th Floor
Boston, MA 02110
(857) 321-8360
DMARX@FICKMARX.COM
WFICK@FICKMARX.COM
ABARSKY@FICKMARX.COM

Dated: April 21, 2025

1

## **TABLE OF CONTENTS**

Introduction ................................................................................................................................... 1

Background ................................................................................................................................... 2

Argument ....................................................................................................................................... 3

I.      New Zealand is an appropriate alternative forum for Plaintiff's claims. ............................ 4

        A.      New Zealand is an "available" forum. .................................................................. 4

        B.      New Zealand offers "adequate" remedies. ............................................................ 5

II.     The public and private interests at stake in this case strongly favor New Zealand as the more appropriate forum. ................................................................................................. 10

        A.      The private factors, which focus on the convenience of witnesses and availability of evidence, favor New Zealand. ......................................................................... 10

        B.      The public factors, which consider the relative interests in and burdens to the available fora, also favor New Zealand. ............................................................... 12

Conclusion .................................................................................................................................. 13

Certificate of Service .................................................................................................................. 14

**INTRODUCTION**

Plaintiff Scarlett Pavlovich, a citizen of New Zealand, asserts various claims against Defendant Amanda Palmer that all arise from her claims that Ms. Palmer's estranged husband, Neil Gaiman, who is not a party to this action, sexually assaulted Plaintiff in New Zealand in 2022, when Plaintiff briefly worked for Ms. Palmer and Gaiman as a babysitter in New Zealand.

All the alleged events, including Gaiman's alleged assaults of Plaintiff and Plaintiff's alleged reports to Ms. Palmer and the local police, supposedly occurred in New Zealand. Put another way, the Complaint does not allege any event that occurred in the United States, much less in Massachusetts, or any injury that Plaintiff supposedly suffered here. Moreover, the material evidence and key witnesses are located in New Zealand or can be called to testify there.

As she has explained in her other motions, Ms. Palmer bears no responsibility, legal or otherwise, for Gaiman's alleged conduct.[1] But for the purpose of this motion, it is clear that this dispute does not belong in this Court. The bare fact that Ms. Palmer is a citizen of the United States who now resides in Massachusetts does not make this Court a proper forum. To the contrary, New Zealand is the far more appropriate and convenient forum for the parties, witnesses, and respective legal systems.

---

[1] Ms. Palmer has filed separate motions to dismiss the Complaint, because (1) Plaintiff has failed to plead any federal or state claims upon which this Court can grant relief, *see* D.E. 12, 13; and (2) she has failed to establish that her federal claims apply to the alleged conduct in New Zealand, *see* D.E. 14, 15. As a procedural matter, this Court enjoys the discretion to decide this motion to dismiss the Complaint on the basis of *forum non conveniens*, before it addresses any other preliminary issues in the case. *See Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (holding "a federal court has leeway 'to choose among threshold grounds for denying audience to a case on the merits'" (quoting *Ruhrgas AG v. Marathan Oil Co.*, 526 U.S. 574, 585 (1999))); *see, e.g.*, *Aenergy, S.A. v. Republic of Angola*, No. 20-cv-3569 (JPC), 2021 U.S. Dist. LEXIS 95336 (S.D.N.Y. May 19, 2021) (allowing motion to dismiss on basis of *forum non conveniens* without deciding separate motion to dismiss for failure to state any claim).

## BACKGROUND

In 2020, Plaintiff met Ms. Palmer in Auckland, New Zealand. *See* D.E. 1 at ¶¶ 19, 22. At the time, Ms. Palmer was married to, but separated from, Gaiman, with whom she shares a child. *See id.* ¶¶ 14, 16. Ms. Palmer and Gaiman lived in separate homes on Waiheke, an island that is a 40-minute ferry ride from Auckland. *See id.* ¶¶ 16, 23-24.

In early 2022, Ms. Palmer asked Plaintiff to "babysit for the weekend," a job that "would entail spending time at both houses." *Id.* ¶¶ 36, 37, 39. A few days later, on February 4, 2022, Plaintiff arrived "at Gaiman's house," and "spent an hour with the child." *Id.* ¶¶ 42, 43. Later, after Gaiman dropped the child off at a friend's house, he returned to his house, gave Plaintiff a "tour of the grounds," and had dinner with her. *Id.* ¶¶ 45, 47, 48. According to Plaintiff, while she was alone with Gaiman, they took a bath together, and he raped her. *See id.* ¶¶ 51-84.

"After the weekend," Ms. Palmer offered Plaintiff "a job as a live-in nanny." *Id.* ¶ 111. Plaintiff "accepted the job," which like her babysitting work, "required her to care for the child at both Ms. Palmer's and Gaiman's houses." *Id.* ¶¶ 118, 119. According to Plaintiff, while she worked as a babysitter, "Gamain repeatedly raped [her]." *Id.* ¶ 124. One of the alleged incidents occurred at Gaiman's home in Waiheke, and another in a hotel in Auckland. *Id.* ¶¶ 125-135, 155-177.

According to Plaintiff, after Gamain and the child left New Zealand on a trip to Europe, she told Ms. Palmer "much of what Gaiman had been doing to her." *Id.* ¶ 213. In response, Ms. Palmer helped Plaintiff find "temporary accommodations" in Auckland. *Id.* ¶ 224. After Plaintiff "became suicidal," she was treated at a "psychiatric respite center" in New Zealand. *Id.* ¶¶ 228, 230. After Plaintiff left the center, she moved from the housing that Ms. Palmer had arranged to other housing with friends in New Zealand. *See id.* ¶ 234.

At some point, when Plaintiff was no longer working as a babysitter and she was living with friends, Gaiman approached her in New Zealand and offered to pay for her past childcare

2

services. *Id.* ¶ 235. Plaintiff gave Gaiman "an invoice for her time, which he paid." *Id.* ¶ 236. Gaiman also offered to help Plaintiff to pay rent, and in exchange, he required her to sign an employment agreement that she contends was a "sham." *Id.* ¶¶ 237-41.

"Later," Plaintiff filed a police report with local authorities in New Zealand, accusing Gaiman (but not Ms. Palmer) of sexual assault. *Id.* ¶ 244. The police took no action, and in her Complaint, Plaintiff blames Ms. Palmer, alleging she "refused to talk to them." *Id.* ¶ 249.

## **ARGUMENT**

"The doctrine of *forum non conveniens* empowers 'a federal district court [to] dismiss an action on the ground that a court abroad is the more appropriate and convenient forum for adjudicating the controversy.'" *Sysco Mach. Corp. v. Cymtek Sols., Inc.*, 124 F.4th 32, 37 (1st Cir. 2045) (quoting *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007)) (noting that "in conducting a *forum non conveniens* analysis, a district court enjoys significant discretion to assess evidence and arguments as it sees fit"). Pursuant to that judicial doctrine, this Court should exercise its broad discretion to dismiss this case, because New Zealand—where all the alleged conduct occurred, the key witnesses reside, and the material evidence is located—is a far more appropriate and convenient forum.[2]

---

[2] Although a plaintiff's choice of forum is typically entitled to some deference, "[w]hen the plaintiff's choice is not its home forum . . . the presumption in the plaintiff's favor 'applies with less force.'" *Sysco Mach. Corp.*, 124 F.4th at 37 (quoting *Sinochem Int'l*, 549 U.S. at 430 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981))). Here, Plaintiff is a citizen of New Zealand and resident of Scotland, *see* D.E. 1 at ¶ 3, and Massachusetts is not her "home forum," so her choice to sue Ms. Palmer in this District is entitled to little, if any, deference.

3

I.      **New Zealand is an appropriate alternative forum for Plaintiff's claims.**

At the first step of the *forum non conveniens* inquiry, this Court must determine "whether an adequate alternative forum exists to the one that the plaintiff has chosen for [her] suit." *Nandjou v. Marriott Int'l, Inc.*, 985 F.3d 135, 141 (1st Cir. 2021). To qualify, an alternative forum must satisfy two requirements: (1) "availability," meaning all parties can "come within the forum's jurisdiction," and (2) "adequacy," meaning no party will be "deprived of all remedies or treated unfairly." *Curtis v. Galakatos*, 19 F.4th 41, 49 (1st Cir. 2021) (quoting *Imamura v. Gen. Elec. Co.*, 957 F.3d 98, 106 (1st Cir. 2020)).

A.      **New Zealand is an "available" forum.**

"The availability requirement is usually satisfied if the defendant stipulates that it is amenable to service of process in the foreign jurisdiction." *Solvander v. Am. Med. Sys.*, MDL No. 2325, No. 2:13-cv-19418, 2014 U.S. Dist. LEXIS 19, *5 (S.D.W.V. Feb. 18, 2014) (allowing motion to dismiss on basis of *forum non conveniens* and noting defendant "submitted to service of process and jurisdiction in New Zealand with respect to this action").[3] For example, in *Lueck v. Sundstrand Corp.*, 236 F.3d 1137 (9th Cir. 2011) (affirming dismissal of tort claims on basis of *forum non conveniens* and holding New Zealand was more convenient forum), the Ninth Circuit

---

[3] *See generally Associacao Basileira de Medicinia de Grupo v. Stryker Corp.*, 891 F.3d 615, 622 (6th Cir. 2018) ("Consents to jurisdiction or representations that a party is amenable to process in a foreign country are normally made in an affidavit or other declaration by the party so consenting.") (citing *Fischer v. Magyar Allamvasutak Zrt.*, 777 F.3d 847, 867 (7th Cir. 2015) (declaration of Austrian bank's chief legal officer consenting to personal jurisdiction in Hungary), and *Tang v. Synutra Int'l, Inc.*, 656 F.3d 242, 250 (4th Cir. 2011) (holding defendant satisfied its burden to show that China was "available" forum by stating in affidavit that it "would not content service of process in China"); *Miller v. Boston Sci. Corp.*, 380 F. Supp. 2d 443, 448-50 (D.N.J. 2005) (finding defendant's concession in briefing that "it has a presence in Israel [and] is subject to the jurisdiction of the Israeli courts," coupled with the court's inherent power to condition dismissal on defendant's agreement to submit to process in Israel, was sufficient to establish that alternative forum was available).

held: "This threshold test is met here because Defendants have indicated that they are amenable to service of process in New Zealand." *Id.* at 1143. So, too, in this case.

As in *Lueck*, Ms. Palmer is a lawful permanent resident of New Zealand, and she consents to jurisdiction and service there. *See* Affidavit of Amanda Palmer (April 21, 2025), ¶¶ 4, 5, attached as Exhibit A. Thus, Ms. Palmer is "amenable to process," and New Zealand is an "available" forum for Plaintiff's claims. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981) (holding requirement to show that alternative forum exists will "[o]rdinarily, . . . be satisfied when the defendant is 'amenable to process' in the other jurisdiction") (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 506-07 (1947)); *Mercier v. Sheraton Int'l, Inc.*, 981 F.2d 1345, 1353 (1st Cir. 1992) (affirming dismissal on basis of *forum non conveniens* and noting "it is appropriate to condition the order of dismissal on the availability, in the Turkish forum, of witnesses and evidence within [defendant]'s control in Massachusetts").

**B.    New Zealand offers "adequate" remedies.**

An alternative forum is "adequate" if it "offers remedies for 'the types of claims that the plaintiff has brought,'" even if a plaintiff "may not enjoy the same benefits as [she] might receive in an American court." *Imamura*, 957 F.3d at 106 (quoting *Iragorri v. Int'l Elevator, Inc.*, 203 F.3d 8, 12 (1st Cir. 2000)). In other words, a foreign forum is only inadequate if its remedies are "so clearly inadequate or unsatisfactory that [they are] *no remed[ies] at all*." *Piper*, 454 U.S. at 254 (emphasis added); *see Lueck*, 236 F.3d at 1144-45 (holding "it is only in 'rare circumstances . . . where the remedy provided by the alternative forum . . . is so clearly inadequate or unsatisfactory, that it is no remedy at all").

Again, as in *Lueck*, "[a] New Zealand remedy is unquestionably available" for Plaintiff. *Id.* at 1144. In this case, Plaintiff asserts various federal statutory claims regarding "sex trafficking" and "forced labor" (Counts 1 to 4) and a state common-law claim of negligence (Count 5), all

5

arising from her allegations that Gaiman sexually assaulted her in New Zealand, while she provided childcare for Gaiman and Ms. Palmer. In this case, Plaintiff seeks to hold Mrs. Palmer civilly liable for money damages. In New Zealand, Plaintiff could seek similar financial compensation for her alleged injuries in various ways.

As an initial matter, New Zealand has a criminal law that, like the TVPA, prohibits trafficking people for commercial sex or forced labor, *see* NZ Crimes Act, 1961, § 98D, as well as a broad law against domestic violence, *see* NZ Domestic Violence Act, 2015, § 3(2) (defining "domestic violence" to include physical, sexual, and psychological abuse), and § 4(1) (defining "domestic relationship" to include violence between persons who "ordinarily share[] a household" or have "a close personal relationship"). In addition, New Zealand permits private individuals to bring civil claims for money damages and other relief due to sexual assaults and domestic violence. Specifically, Plaintiff could seek financial compensation, including from Ms. Palmer (and Gaiman), through one or more of the following means:

- an administrative claim to the Accident Compensation Corporation ("ACC"), the national no-fault tort insurance scheme that awards compensation to injured persons, including sexual abuse victims, *see* NZ Accident Compensation Act (2001), §§ 20-21; *Lueck*, 236 F.3d at 1144 ("Although New Zealand law does not permit Plaintiffs to maintain this exact suit, New Zealand through its no-fault accident compensation scheme, has provided and continues to provide a remedy for Plaintiffs' losses."); R. Tobin, "Civil Actions for Sexual Abuse in New Zealand," 5 Tort L. Rev. 190, 192-93 (1997) (discussing available compensation for "[t]hose who suffered sexual assaults" resulting in physical and mental harms); https://www.acc.co.nz/im-injured/what-we-cover/support-after-sexual-abuse-and-assault;[4]

- a civil action in New Zealand courts for "exemplary damages," which may be imposed on persons who cause personal injury

---

[4] In addition to financial compensation, the ACC provides a range of remedial services, including psychotherapy, individualized supports, and employment assistance.

6

     through sufficiently outrageous conduct, *see* NZ Injury Prevention, Rehabilitation, and Compensation Act (2001), §§ 317, 319, https://www.legislation.govt.nz/act/public/2001/0049/4.0/DLM99494.html; *Lueck*, 236 F.3d at 1144 n.3 (noting that under New Zealand law, and despite no-fault tort compensation scheme, "an individual can still sue for exemplary damages"); *Solvander*, 2014 U.S. Dist. LEXIS 19780, at *8 (same); Tobin, *supra*, at 194-95 (discussing decisions that awarded exemplary damages to victims of sexual assaults, including case in which judge ruled it would be "difficult to imagine a plainer case for exemplary damages than act of violent rape"); and/or

- "reparations" under the NZ Sentencing Act (2002), § 32, in connection with a criminal action, a penalty similar to restitution in U.S. courts that requires a defendant to pay compensation to a victim following a conviction, *see* https://www.police.govt.nz/faq/am-i-entitled-compensation-victim-crime.[5]

Not surprisingly, given the robust, modern legal system in New Zealand, courts in the United States have "repeatedly . . . found" New Zealand to be an "adequate forum" to address a wide range of tort claims. *Intec USA LLC v. Engle*, No. 05-C-6171, 2005 U.S. Dist. LEXIS 33365, *6-7 (N.D. Ill. Dec. 13, 2005) (allowing motion to dismiss on basis of *forum non conveniens*)[6];

---

[5] In New Zealand, on behalf of the Ministry of Justice, the Victim Support Services also administers a "Victim Assistance Scheme" that makes payments to victims of crime, including sexual assault, to help them address with the immediate aftermath of an incident, costs associated with their "safety and healing," and court attendance. *See* https://www.victimsupport.org.nz/financial-assistance.

[6] On appeal, the Seventh Circuit vacated the order of dismissal on the basis of *forum non conveniens*, remanded for further proceedings, and ordered the dismissal for lack of subject-matter jurisdiction. *See Intec USA, LLC v. Engle*, 467 F.3d 1038 (7th Cir. 2006). At the time, the Supreme Court had not yet decided *Sinochem*, and it was not yet clear "whether a district court may dismiss on *forum non conveniens* grounds without deciding whether it has subject-matter jurisdiction." *Id.* at 1041. Nothing in the decision suggests, however, that the appeals court disagreed with the district court's decision that New Zealand was a more appropriate and convenient forum. In fact, the Seventh Circuit emphasized that "the United States must be prepared to trust the judiciary of our partners, unless there are grounds to doubt the competence or honesty of the foreign judicial system," and noted that Intec had "not offer[ed] any reason" to conclude that New Zealand would not be an adequate forum. *Id.* at 1040. The Seventh Circuit simply chose to address the threshold issues in a different sequence.

*see, e.g.*, *Lueck*, 236 F.3d at 1144-45 (affirming dismissal on basis of *forum non conveniens* of wrongful death and personal injury claims arising from airplane crash in New Zealand); *Flack v. Nutribullet, LLC*, No. 2:18-cv-05829-DDP, 2018 U.S. Dist. LEXIS 205356, at *7 (C.D. Cal. Dec. 4. 2018) (ruling New Zealand was adequate alternative forum, but denying motion to dismiss based on *forum non conveniens* because California had strong local interest in products liability claims involving products that California companies designed in California); *Solvander*, 2014 U.S. Dist. LEXIS 19780, at *6-8 (dismissing product liability claims on basis of *forum non conveniens* where plaintiffs used products and received medical care in New Zealand); *In re Silicone Gel Breast Implant Prods. Liab. Litig.*, 887 F. Supp. 1469 (N.D. Ala. 1995) (dismissing wrongful death and personal injury claims on basis of *forum non conveniens* and ruling "[f]or those . . . who can use the court system or pursue administrative remedies in New Zealand, . . . an alternative forum does exist"); *Stonehill v. Int'l Harvester Co.*, 132 Ill. App. 3d 1043 (Ill. App. Ct. 1985) (reversing denial of motion to dismiss on basis of *forum non conveniens* and remanding wrongful death claim arising from fatal tractor accident in New Zealand).[7] This Court should reach the same conclusion regarding Plaintiff's claims in this case.

Although the First Circuit has never directly addressed whether New Zealand is an adequate alternate forum for tort claims, it has approvingly cited to "*Lueck*'s analysis" which "dovetails with *Piper*'s emphasis on the existence of any adequate remedy for plaintiff's injury." *Imamura*, 957 F.3d at 111-12 (discussing *Lueck*, comparing New Zealand's administrative scheme for all personal injury claims to Japan's administrative scheme for personal injury claims arising

---

[7] All these cases concluded that New Zealand is an adequate alternative forum for a wide range of tort claims, and research has revealed no case that held New Zealand is *not* an adequate alternative forum.

from the Fukushima nuclear disaster, and holding the latter provides adequate remedies). Indeed, in affirming the dismissal of claims in the United States against General Electric by victims of the Fukushima nuclear disaster in Japan, the First Circuit closely followed the Ninth Circuit's analysis and reached the same conclusion that a compulsory administrative scheme could constitute an adequate foreign forum.

> In rejecting the *Lueck* plaintiffs' arguments that the ACA's bar on civil damages claims undermined New Zealand's availability and adequacy as an alternative forum, the Ninth Circuit held that, "[a]lthough New Zealand law does not permit [them] to maintain this exact suit, New Zealand, through its no-fault accident compensation scheme, has provided and continues to provide a remedy for [their] losses. Absent any showing that the available administrative remedy was unacceptably inadequate, the Ninth Circuit concluded that the alternative forum need not "offer a judicial remedy" because "[t]he *forum non conveniens* analysis does not look to the precise source of the plaintiff's remedy."
>
> Similarly, in our case, the district court had sound reason to determine that "[al]though it does not provide a judicial remedy, the ADR Center mediation [in Japan] is similar to the administrative compensation schemes upheld in cases like *Lueck*.

*Id.* (internal quotations and citations omitted); *see also Veljkovic v. Carlson Hotels, Inc.*, 857 F.3d 754, 756-57 (7th Cir. 2017) (affirming dismissal on basis of *forum non conveniens* and holding Serbian Restitution Agency, while "not a court," was adequate forum, because in foreign countries, "nonjudicial modes of dispute resolution are common, and proper if adequate, as they often are").

In this case, Plaintiff seeks millions of dollars in compensatory damages, punitive damages, and attorneys' fees. *See* D.E. 1 at ¶¶ 283, 291, 301, 308, 327. Presumably, she brought her lawsuit in the United States, because she hopes that a favorable verdict in this country "could yield [a] significantly higher award[]" than "the compensation [she would] received from the ACC." *Lueck*, 236 F.3d at 1144. But "th[at] argument fails" to establish that New Zealand is not an appropriate forum. *Id.* at 1144; *see Iragorri*, 203 F.3d at 8 (holding "downgrade in remedy," including

9

possibility of less "generous awards," "does not impugn the adequacy of the proposed alternative forum"). Plaintiff has no right to burden this Court so that she can litigate in the United States her foreign claims about alleged events that all supposedly occurred in New Zealand.

## II. The public and private interests at stake in this case strongly favor New Zealand as the more appropriate forum.

At the second step of the *forum non conveniens* inquiry, this Court must determine "whether 'the compendium of factors relevant to the public and private interests implicated by the case strongly favors dismissal.'" *Sysco Mach. Corp.*, 124 F.4th at 38 (quoting *Iragorri*, 203 F.3d at 12). In assessing these various factors, "flexibility" is critical, because in the end, this Court must determine "where trial will best serve the convenience of the parties and the ends of justice." *Iragorri*, 203 F.3d at 12 (quoting *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 527 (1947)). As noted above, *see supra* at 3 n.2, in this flexible and discretionary analysis, Plaintiff's decision to bring this action in a court that is not her "home forum" is entitled to little, if any, deference.

### A. The private factors, which focus on the convenience of witnesses and availability of evidence, favor New Zealand.

The "non-exhaustive list" of private-interest factors includes the following:

> The relative ease of access to sources of proof, availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Sysco Mach. Corp.*, 124 F.4th at 38 (quoting *Gilbert*, 330 U.S. at 508). All those private-interest factors strongly favor New Zealand as the most convenient forum to address Plaintiff's claims.

In *Lueck*, although important evidence existed in both the United States and New Zealand, the Ninth Circuit held that "the private interest factors weigh in favor of dismissal," because "the district court cannot compel production of much of the New Zealand evidence, whereas the parties

10

control, and therefore can bring, all the United States evidence to New Zealand." 236 F.3d at 1147. In *Intec USA*, where "[t]he crux" of the case involved "the conduct of New Zealand residents" and "the alleged misconduct took place in New Zealand," the court reached the same result, finding that "[a] large number of witnesses with information are likely located in New Zealand and are outside the court's power of compulsory process." 2005 U.S. Dist. LEXIS 33365, at *9.

That reasoning applies with even greater force in this case. Other than Ms. Palmer herself (who consents to jurisdiction in New Zealand and would agree to testify there), the important witnesses[8] and material evidence[9] are all located in New Zealand or can be made available there. *See Sysco Mach. Corp.*, 124 F.4th at 42 (affirming dismissal on basis of *forum non conveniens* where district court ruled Taiwan, as alternate forum, "offers greater access to witnesses" than the United States). In contrast, discovery and trial of this case in the United States would be exorbitantly expensive, if not altogether impossible. *See Intec USA*, 2005 U.S. Dist. LEXIS 33365, at *9 (recognizing that transporting voluntary witnesses from New Zealand would be expensive and time-consuming). No witness from New Zealand could be compelled to appear in this District. And Gaiman, who is perhaps the most important witness, apparently resides in Wisconsin (beyond

---

[8] For example, key witnesses in New Zealand include individuals who could testify about Plaintiff's work as a babysitter for Gaiman and Ms. Palmer; the interactions among Plaintiff, Gaiman and Ms. Palmer; Gaiman's alleged assaults of Plaintiff; and Plaintiff's contemporaneous admissions, including in her texts to friends and other third-parties, that any sexual activity with Gaiman had been consensual.

[9] For example, material evidence in New Zealand includes evidence about the separate homes in which Plaintiff worked for Gaiman and Ms. Palmer, respectively; the supposedly "remote" island of Waiheke, off Auckland, where those homes were located; the hotel in Auckland where one of the alleged assaults occurred; the local police investigation of Plaintiff's sexual assault claims, which did not result in any criminal charges against Gaiman or Ms. Palmer; and Plaintiff's alleged damages, including records of medical and mental-health treatment that she claims to have received in New Zealand.

11

the subpoena power of this Court), is a citizen of the United Kingdom, and has indicted his willingness to proceed in New Zealand.[10]

### B. The public factors, which consider the relative interests in and burdens to the available fora, also favor New Zealand.

An illustrative list of public-interest factors includes the following:

> The administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home"; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Sysco Mach. Corp.*, 124 F.4th at 38 (quoting *Piper*, 454 U.S. at 241 n.6 (quoting *Gilbert*, 330 U.S. at 509)). To the extent applicable, these factors point to New Zealand as the appropriate forum.

In *Lueck*, the court recognized that "the interest in New Zealand" regarding civil claims arising from a fatal airplane crash in New Zealand was "extremely high." 236 F.3d at 1137. The same is true concerning civil claims arising from alleged sex trafficking and forced labor in New Zealand, by residents of New Zealand against a citizen of New Zealand. *See Intec USA*, 2005 U.S. Dist. LEXIS 33365, at *13 (ruling "New Zealand has a strong interest in regulating purported misconduct committed by its residents"); *see also S.R.J. v. Marriott Int'l, Inc.*, No. 2:21-cv-1863, 2022 U.S. Dist. LEXIS 191019, at *15-16 (W.D. Pa. Oct. 19, 2022) (ruling Mexico had "overwhelming interest" in civil claims arising from alleged sexual assault by citizen of Mexico at resort in Mexico); *Jane Doe L.C. v. Aimbridge Hosp., LLC*, No. 19-cv-1762 (MN), 2020 U.S.

---

[10] Plaintiff has sued Gaiman in federal court in Wisconsin, and he has moved to dismiss that action on the basis of *forum non conveniens*, disputing Plaintiff's claims about the alleged sexual assaults and agreeing to address them in New Zealand. *See Pavlovich v. Gaiman and Palmer*, No. 25-cv-00078-jdp (W.D. Wis.), D.E. 18-19 (Gaiman's Mot. and Br. in Support of Mot. to Dismiss).

Dist. LEXIS 172336, at *10-11 (D. Del. Sept. 21, 2020) (ruling "[p]ublic interest regarding the resolution of this incident [*i.e.*, alleged sexual assault] inures to the setting in which the alleged incident took place – Jamaica").

Meanwhile, "the local interest" in Massachusetts concerning this case is "comparatively low," such that this Court "should not be forced to bear the burden of this dispute." *Id.* at 1147. The only connection to Massachusetts is that Ms. Palmer now resides here, having moved here after all the alleged events occurred. That may suffice for personal jurisdiction, but it does not prove this forum is convenient or appropriate.[11] As the First Circuit has recognized, "Courts may validly protect their dockets from cases [that] lack significant connection" and "may legitimately encourage trial of controversies in *the localities* in which they arise." *Mercier*, 981 F.2d at 1355 (quoting *Pain v. United Techs. Corp.*, 637 F.2d 775, 792 (D.C. Cir. 1980)). This Court should follow that sensible guidance in this case.

## CONCLUSION

For the foregoing reasons, this Court should dismiss the entire Complaint.

---

[11] Plaintiff brought three nearly identical actions against Ms. Palmer in Massachusetts, New York, and Wisconsin (where Plaintiff also sued Gaiman), because Plaintiff neither knew nor cared where Ms. Palmer lives. *See* D.E. 1 at ¶ 8 ("Given the uncertainty regarding Palmer's state of residence, Plaintiff is simultaneously filing actions against Palmer" in three different districts, and Plaintiff "will proceed against Palmer only in the district of her choosing."); *Pavlovich v. Palmer*, No. 1:25-cv-00969 (S.D.N.Y. filed Feb. 3, 2025); *Pavlovich v. Gaiman and Palmer*, No. 25-cv-00078-jdp (W.D. Wis. filed Feb. 3, 2025). In so doing, Plaintiff all but concedes that Massachusetts has no meaningful connection—and, thus, no public interest—in her claims against Ms. Palmer.

>Respectfully submitted,
>
>**AMANDA PALMER**
>
>By her attorneys,
>
>*/s/ Daniel N. Marx*
>Daniel N. Marx, Esq. (BBO#674523)
>William W. Fick, Esq. (BBO#650562)
>Amy Barsky, Esq. (BBO#601111)
>FICK & MARX LLP
>24 Federal Street, 4th Floor
>Boston, MA 02110
>(857) 321-8360
>DMARX@FICKMARX.COM
>WFICK@FICKMARX.COM
>ABARSKY@FICKMARX.COM

Dated: April 21, 2025

## CERTIFICATE OF SERVICE

    I certify that this document and any attachments filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on April 21, 2025.

>*/s/ Daniel N. Marx*
>Daniel N. Marx

14