## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

SCARLETT PAVLOVICH,

  Plaintiff,

  -against-

AMANDA PALMER,

          Defendant.

C.A. NO. 1:25-CV-10263F

---

**PLAINTIFF SCARLETT PAVLOVICH'S MEMORANDUM IN OPPOSITION TO DEFENDANT AMANDA PALMER'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT ON THE BASIS OF *FORUM NON CONVENIENS***

---

Mitchell J. Matorin (BBO# 649304)
MATORIN LAW OFFICE, LLC
18 Grove Street, Suite 5
Wellesley, MA 02482
Telephone: (781) 453-0100
e-mail: mmatorin@matorinlawoffice.com

Michael Nimmo CO Bar #36947
WAHLBERG, WOODRUFF, NIMMO &
SLOANE, LLP
4601 DTC Boulevard, Suite 950
Denver, CO 80237
Telephone: (303) 571-5302
e-mail: michael@denvertriallawyers.com

Thomas Neville (pro hac vice)
Dylan Schmeyer (pro hac vice)
Akiva M. Cohen (pro hac vice)
KAMERMAN  UNCYK  SONIKER  &
KLEIN P.C.
1700 Broadway
New York, New York 10019
Telephone: (212) 400-4930
e-mail: tneville@kusklaw.com
e-mail: dschmeyer@kusklaw.com
e-mail: acohen@kusklaw.com

## Table of Contents

INTRODUCTION ............................................................................................................... 1

FACTUAL BACKGROUND ............................................................................................. 2

ARGUMENT ..................................................................................................................... 4

I.    The United States District Court for the District of Massachusetts is the Proper Forum and Palmer's *Forum Non Conveniens* Motion Must Be Denied .................................................... 4

      A.    New Zealand's Forum is Not an Available or Adequate Forum ............................ 6

      B.    Scarlett's Choice of Forum is Entitled to Deference .............................................. 11

II.    New Zealand is Not a More Convenient Forum ................................................................. 12

      A.    The Private Interests Favor Litigation in Massachusetts. ..................................... 12

      B.    The Public Interest Factors Strongly Favor Litigation in This District ................ 17

      C.    The Interests of Justice Favor the District of Massachusetts. ............................... 19

CONCLUSION ................................................................................................................... 20

# Table Of Authorities

## Cases

*Bridgestone/Firestone, Inc.*, 420 F.3d 702 (7th Cir. 2005) .............................................. 4

*Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216 (9th Cir. 2011) ............................... 5, 15

*Coffey v. Van Dorn Iron Works*, 796 F.2d 217 (7th Cir.1986) ....................................... 18

*Curtis v. Galakatos*, 19 F.4th 41 (1st Cir. 2021) ................................................... 5

*Deb v. SIRVA, Inc.*, 832 F.3d 800 (7th Cir. 2016) ............................................ 4, 5, 10

*Domanus v. Lewicki*, 645 F. Supp. 2d 697 (N.D. Ill. 2009) ......................................... 7

*Duha v. Agrium, Inc.*, 448 F.3d 867 (6th Cir. 2006) ............................................. 15

*Ford Motor Co., Bridgestone/Firestone N. Am. Tire, LLC*, 344 F.3d 648 (7th Cir. 2003) ............ 5

*Gulf Oil Corp. v Gilbert*, 330 U.S. 501 (1947) ................................................ 5, 12, 16

*Huhtamaki Co. Mfg. v. CKF, Inc.*, 648 F. Supp. 2d 167 (D. Me. 2009) .............................. 5

*Kamel v. Hill–Rom Co.*, 108 F.3d 799 (7th Cir. 1997) ............................................. 5

*Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111 (2d Cir. 2010) ............................... 16

*Lacey v. Cessna Aircraft Co.*, 862 F.2d 38 (3d Cir. 1988) ........................................ 12

*Lueck v. Sundstrand Corp.*, 236 F.3d 1137 (9th Cir. 2001) ........................................ 8

*Marriott v. Sedco Forex Int'l Res.*, Ltd., 827 F. Supp. 59 (D. Mass. 1993) ....................... 6

*Mercier v. Sheraton Int'l, Inc.*, 981 F.2d 1345 (1st Cir. 1992) ................................. 11

*Otto Candies, LLC v. Citigroup, Inc.*, 963 F.3d 1331 (11th Cir. 2020) .......................... 14, 15

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235 n.22 (1981) ......................................... 5, 6

*Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 244 F. Supp. 2d 289 (S.D.N.Y. 2003).. 16

*Ramirez de Arellano v. Starwood Hotels & Resorts Worldwide, Inc.*, 448 F. Supp. 2d 520
    (S.D.N.Y. 2006) .............................................................................. 11

*Re Air Crash Disaster Near New Orleans, La.*, 821 F.2d 1147 (5th Cir. 1987) ..................... 5

*Regents of the University of California v. Eli Lilly & Co.*, 119 F.3d 1559 (Fed.Cir.1997) ........... 18

*Roe v. Howard*, 917 F.3d 229 (4th Cir. 2019) ................................................... 16

*Sector Nav. Co. v. M/V CAPTAIN P*, No. CIV A 06-1788 (E.D. La. Oct. 13, 2006) .................... 9

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422 (2007) ........................ 5

*Thomson Info. Servs. v. British Telcoms.*, 940 F. Supp. 20 (D. Mass. 1996 .......................... 11

*U.S. v. Baston*, 818 F.3d 651 (11th Cir. 2016) ................................................... 17

*Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88 (2d Cir. 2000) .................................... 7

## Statutes

18 U.S.C § 1595 ............................................................................. 1, 7

Trafficking Victims Protection Reauthorization Act of 2003, Pub. L. No. 108-193, §2(2),
    117 Stat. 2875 .............................................................................. 16

## Other Authorities

Crimes Act 1961 ............................................................................... 7

Family Violence Act 2018 (2018 No 46) §§ 13-14.......................................................... 9

Plaintiff respectfully requests that the Court deny Defendant Amanda Palmer's Motion to Dismiss Plaintiff's Complaint on the Basis of *Forum Non Conveniens*:

## **INTRODUCTION**

Scarlett Pavlovich was trafficked by Palmer and sexually assaulted by Neil Gaiman. Both Palmer and Mr. Gaiman are United States citizens/residents who maintain a place of residence within Massachusetts and Wisconsin, respectively. Palmer attempts to strategically persuade this Court to believe that the correct forum for Scarlett's litigation is in the country of New Zealand.

Palmer hopes, that by changing the forum country to New Zealand, Scarlett will be unable to pursue her claims. Palmer, although incorrectly, attempts to superficially argue that Scarlett's claims must be litigated within New Zealand because the events that gave rise to Scarlett's claims occurred in New Zealand. This interpretation of the case law and the *Forum Non Conveniens* doctrine is simply wrong.

Both this Court and Scarlett have a significant interest in the litigation of Scarlett's claims in this forum. The violations of the TVPA that gave rise to Scarlett's claims were committed by a citizen and residents of the United States and a citizen of this forum. As explained in her other motions, the TVPA was created specifically to protect against the types of claims herein perpetrated by United States citizens and residents. Indeed, the TVPA explicitly authorizes the courts of the United States to exercise extra-territorial jurisdiction over any alleged offender who is present in the United States, regardless of his or her nationality. 18 U.S.C. § 1596(a)(2). Amanda Palmer is unquestionably present here.

Furthermore, and in the interest of justice, any change of forum to New Zealand would significantly impact Scarlett's ability to hold Palmer and Gaiman accountable for their actions. New Zealand law offers relatively no ability for Scarlett to pursue her personal injury civil claim

1

against Palmer and its Accident Compensation Corporation insurance scheme provides no damages recovery for emotional harm. Any change in forum to New Zealand would impact Scarlett's ability to effectively communicate with counsel located within the United States and to coordinate with her ongoing litigation against Mr. Gaiman located in Wisconsin. Despite Palmer's statements to the contrary, New Zealand would be a far less appropriate forum then the District of Massachusetts. Palmer's motion arguing that New Zealand is a more appropriate forum is an attempt to interpose burdens such that any attempt by Scarlett to pursue her claims is made so burdensome that Scarlett simply ceases to pursue them.

## **FACTUAL BACKGROUND**

Scarlett Pavlovich was 22 years old when Neil Gaiman sexually assaulted her multiple times in New Zealand. *See* Dkt. 1 at ¶8-253.  Gaiman brutalized, humiliated, and forced Scarlett to engage in appalling sexual acts while she provided free childcare and labor for Gaiman and Palmer's child. *Id.* Gaiman has a decades-long history of sexual misconduct in which he had forced several other women to engage in similar and horrifying sexual acts. *Id.* at ¶ 10. Since at least 2015, Palmer has been aware of Gaiman's pattern of sexual misconduct and abuse. *Id.* at ¶ 15.

Scarlett and Palmer met in Auckland, New Zealand, in 2020. *Id.* at ¶ 18. At the time, Scarlett was economically insecure and unhoused. *Id.*, ¶28-29. In addition, Scarlett had struggled with substantial mental health difficulties over the years; including significant bouts of anxiety related to her insecure housing status. *Id.* at ¶26-35.  Scarlett had discussed both her mental health difficulties and her economic status with Palmer on numerous occasions. *Id.* at ¶30-35. Palmer, armed with this knowledge, Palmer sought to recruit and entice Scarlett into giving Palmer and Gaiman free labor and services knowing or recklessly disregarding the fact that Gaiman would target Scarlett as he had so many women before. *Id.* at ¶86-99.

2

In February of 2022, Palmer asked Scarlett to babysit her child for the weekend at her home on Waiheke Island. *Id*., at ¶36, Waiheke Island is located 40-minutes by ferry off the coast of Auckland, New Zealand. *Id.* at ¶23-25. Palmer promised payment for Scarlett's services and requested that Scarlett spend time at both her home and Gaiman's home on the island. *Id.* at ¶ 39-42. She then, effectively, set up a "date" for Scarlett and Mr. Gaiman, without Scarlett's knowledge and without warning her about the known danger Gaiman posed. *Id.* at ¶ 46. On February 4, 2022, Scarlett arrived at Gaiman's house to babysit for Gaiman and Palmer's child. *Id.* at ¶ 42. Unbeknownst to Scarlett, Palmer had purchased tickets to a film event and suggested that Scarlett attend the event with Gaiman after dropping the child off at a family friend's house for a playdate. *Id.* at ¶46. Gaiman used this opportunity to force Scarlett to engage in unwanted and nonconsensual sexual acts. *Id.* at ¶ 47-86. Gaiman insisted, despite Scarlett's unwillingness, that Scarlett bathe in his bathtub at his home. *Id.* at ¶ 51-54. There, Gaiman forcibly penetrated and raped Scarlett. *Id.* at ¶ 56-84.

Palmer knew Gaiman's history of sexual misconduct and knew that Gaiman had a need to humiliate his female sexual partners. *Id*., at ¶ 90-97. Palmer was specifically aware that Gaiman would see Scarlett as an attractive target. *Id.* at ¶ 90-97. Indeed, after his first assault Gaiman told Scarlett that Palmer "told me that I couldn't have you" and that Gaiman couldn't have "this one." *Id.* at ¶ 85-97. Palmer either knew or should have known that telling Gaiman that he "couldn't have" Scarlett would fuel his desire to sexually assault Scarlett, and knew or should have known that Gaiman would engage in non-consensual sexual acts with Scarlett. *Id.* at ¶ 97. Palmer never disclosed any of Gaiman's history of prior sexual misconduct or the danger that Gaiman posed to Scarlett prior to engaging her to work for her and Gaiman. *Id.* at ¶94-96.

After the weekend of February 4, 2022, Palmer formally offered Scarlett a job as a live-in nanny, a job Scarlett's economic situation essentially required her to take. *Id.* at ¶ 111. Although Palmer made promises to pay Scarlett for her services, Palmer did not pay Scarlett. *Id.* at ¶ 120-21. In essence, Palmer and Gaiman kept Scarlett as an economic hostage knowing that Scarlett was economically insecure. *Id.* at ¶122. During her time as a live-in nanny, Gaiman repeatedly sexually assaulted Scarlett. *Id.* at ¶ 123. Palmer aided and abetted Gaiman's sexual assault by withholding payment from Scarlett, forcing her to become reliant on Palmer and Gaiman and to keep Scarlett from escaping. Palmer now seeks to entirely avoid liability for her conduct not by defending it on its merits, but by seeking dismissal of Scarlett's claims on the basis that they ought to be pursued in New Zealand – a forum that is not truly available to Scarlett, which would not provide her a remedy, is vastly more inconvenient for the parties than this Court, and transfer to which would violate strong public policy articulated in the Trafficking Victim Protection Act ("TVPA"). The motion should be denied.

## **ARGUMENT**

### I.    **The United States District Court for the District of Massachusetts is the Proper Forum and Palmer's *Forum Non Conveniens* Motion Must Be Denied**

Palmer's motion to dismiss based on *forum non conveniens* is meritless, because New Zealand does not provide an available alternative forum for Scarlett to bring a civil claim for damages against Palmer. Declaration of Dylan Schmeyer ¶ 2, Ex. 1 at ¶ 1.3(a). Even if there were an available forum in New Zealand, litigating Scarlett's claims would be far less convenient for the parties than the District of Massachusetts, where Palmer resides. Further, the U.S. has an articulated strong policy interest in seeing this suit proceed in U.S. district courts. Notwithstanding any of the above reasons, the interests of justice would compel retention of jurisdiction. The motion should be denied.

The doctrine of *forum non conveniens* allows – but does not require – a district court to dismiss an action in service of both the convenience of the parties and the interests of justice. *In re Bridgestone/Firestone, Inc.*, 420 F.3d 702, 703 (7th Cir. 2005). However, dismissal based on *forum non conveniens* is "a drastic exercise of the court's inherent power" that must be reserved for exceptional cases. *Deb v. SIRVA, Inc.*, 832 F.3d 800, 805–06 (7th Cir. 2016) (vacating a *forum non conveniens* dismissal of claims by Canadian plaintiff regarding contract with Indian moving company for move of belongings from India to Canada), *quoting Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1224 (9th Cir. 2011).

"Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v Gilbert*, 330 U.S. 501, 504 (1947). A defendant moving for *forum non conveniens* dismissal therefore bears a heavy burden, and heightened deference should be afforded to plaintiff's choice of forum unless it is "oppressive and vexatious to the defendant, out of all proportion to the plaintiff's convenience." *Id.*, *quoting In re Ford Motor Co., Bridgestone/Firestone N. Am. Tire, LLC*, 344 F.3d 648, 651 (7th Cir. 2003); *Huhtamaki Co. Mfg. v. CKF, Inc.*, 648 F. Supp. 2d 167 (D. Me. 2009). To meet that heavy burden, a defendant must show that the plaintiff's chosen forum is "so inconvenient that transfer is needed to avoid serious unfairness." *Curtis v. Galakatos*, 19 F.4th 41, 47 (1st Cir. 2021).

To determine whether a dismissal for *forum non conveniens* is appropriate, a court first must determine if an alternative and adequate forum is available and then go on to balance the interests of the various participants. *Deb*, 832 F.3d at 807. Defendant must submit evidence of an adequate and alternative forum. *Id.* at 810. The defendant's burden in alleging *forum non conveniens*, however, is heavy in opposing Plaintiff's chosen forum. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007).

The first step in any *forum non conveniens* analysis is to decide whether an adequate alternative forum is available and exists. *Kamel v. Hill–Rom Co.*, 108 F.3d 799, 802 (7th Cir. 1997) (citing *Piper Aircraft*, 454 U.S. at 254 n.22). The availability of the forum is a two-part inquiry involving availability and adequacy. *In Re Air Crash Disaster Near New Orleans, La.*, 821 F.2d 1147, 1165 (5th Cir. 1987) "An alternative forum is available if all parties are amenable to process and are within the forum's jurisdiction." *Kamel*, 108 F.3d at 803. An alternative forum is inadequate to the extent that the remedy provided by the forum would be so inadequate that for all intents and purposes the forum is not available. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255, n.22 (1981).

### A.    New Zealand's Forum is Not an Available or Adequate Forum

New Zealand is not an available or adequate forum, and the motion must be denied for that reason alone. A forum is available only if it allows litigation of the claims. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254, n. 22 (1981) ("dismissal would not be appropriate where the alternative forum does not permit litigation of the … dispute"). More, even if the forum provides some nominal remedy, it is still not an "available alternative" if that remedy is "so clearly inadequate or unsatisfactory that it is no remedy at all." *Id.* at 254; *See also Marriott v. Sedco Forex Int'l Res.*, Ltd., 827 F. Supp. 59, 69 (D. Mass. 1993). In evaluating whether an alternative forum is available, if there is an unfavorable change in law in the alternative forum, that may be given substantial weight, and the district court may conclude that dismissal would not be in the interests of justice. *Piper,* 454 U.S. at 254. New Zealand is not an available forum for multiple reasons.

First, New Zealand law bars civil claims for damages because of a personal injury, and its Accident Compensation Corporation insurance scheme provides no damages recovery for

emotional harm – only some coverage for future therapy *in* New Zealand. Schmeyer Dec. Ex. 1. This alone answers the question of whether there is an available adequate forum, and that answer is clearly no. *See Marriott*, 827 F. Supp. at 71 (England, India, and South Africa inadequate forums where they did not allow recovery of emotional distress damages). In *Piper*, the Supreme Court held that a forum can only be considered available if it allows for litigation of the dispute. In New Zealand Scarlett is barred from litigating any claims for compensatory damages against Palmer. A plaintiff could not pursue civil claims in New Zealand for compensation from Palmer equivalent to those pleaded in the Complaint. Schmeyer Dec. Ex. 1 at ¶¶ 1.3(a), 2.16(b), (c). New Zealand statutorily barred common law tort claims when it enacted the Accident Compensation Act of 1972, which is a no-fault scheme that provides "cover" for mental and physical injuries very similar to how the worker's compensation scheme works in the United States. *Id.* at ¶ 2.1. Under the ACC a person who has cover is barred from bringing any civil claim for compensatory damages and prohibited from suing the tortfeasor. *Id.* at ¶ 2.16. Further, in addition to the bar of common law claims, there is no provision in New Zealand law equivalent to 18 U.S.C § 1595 conferring a civil right of action. New Zealand enacted § 98D of the Crimes Act 1961, which creates an offence of human trafficking punishable by twenty years' imprisonment and/or a fine of up to $500,000; although one of the purposes of the sections was to protect an identifiable class of people, Parliament contemplated that the appropriate mode of enforcement was criminal sanction. Schmeyer Dec. Ex. 1 at ¶ 2.28. New Zealand simply provides no civil cause of action at all for Palmer and Mr. Gaiman's human trafficking. *Id.* at ¶ 2.31.

Indeed, *forum non conveniens* dismissal would be particularly inappropriate for claims based on a statute by which Congress expressed its policy preference that U.S. courts address and remedy human trafficking conducted by U.S. permanent residents such as Palmer. *See Wiwa v.*

*Royal Dutch Petroleum Co.*, 226 F.3d 88, 105 (2d Cir. 2000) (recognizing that the Torture Victims Prevention Act "expresses a policy favoring receptivity by our courts to such suits" because "the interests of the United States are involved in the eradication of torture committed under color of law in foreign nations"). Because New Zealand provides no remedy at all for Palmer and Gaiman's human trafficking, it is not an available forum, and the Court's *forum non conveniens* analysis need not go any further. *See Domanus v. Lewicki*, 645 F. Supp. 2d 697, 702 (N.D. Ill. 2009) (Poland not an available forum where it did not recognize plaintiffs' causes of action).

Notwithstanding that Scarlett is barred from bringing a civil claim for compensatory damages, New Zealand is also unavailable for a separate reason. Any action Scarlett might file in New Zealand would subject her, before her claims could proceed to an order requiring security for Palmer's costs of defense should she succeed in her defense. Schmeyer Dec Ex. 1 at ¶ 2.37. Scarlett is a student with few if any assets and would not be able to provide security for costs. Schmeyer Dec. Ex. 2 at  ¶ 17. Scarlett definitively cannot litigate any of the claims she has plead in her Complaint in New Zealand. As such, it is not an available alternative forum. *Cf. Marriott*, 827 F. Supp. at 69 ("Inability to pre-pay a retainer and advanced costs has been considered a factor in the *forum non conveniens* analysis").

Even in the event the Court disagrees and does find that New Zealand is an adequate alternative forum, the analysis of Palmer's motion for *forum non conveniens* must continue to the next step in the analysis. As shown below, the interests of the various participants clearly favor litigation in United States District Court for the District of Massachusetts and Palmer's Motion should be denied.  Palmer's memorandum relies heavily on decisions such as *Lueck v. Sundstrand Corp.*, 236 F.3d 1137 (9th Cir. 2001), in which the Ninth Circuit held that New Zealand was an adequate alternative forum because the ACC remedy available in New Zealand included

"compensation [for] their physical injuries sustained in the accident and the resulting loss of earnings," which were the damages they sought in the claim they filed in the United States. *Id.* at 1144. Under such circumstances, that New Zealand imposed a damages cap that meant the plaintiffs would recover less did not render the forum inadequate, because it allowed recovery for the losses at issue. *Id. Lueck* cited other cases which had similarly found New Zealand's scheme not inadequate for the same reasons. *Id.*

But those cases are not applicable here, because New Zealand does not allow damages for mental injury, which is what Scarlett seeks to recover here. Schmeyer Dec. Ex. 1. at ¶¶ 2.16(b), (c), (d), and (e). That is not the "same damages remedy, just less of it" that *Lueck* and cases like it found sufficient in cases where compensation for physical injury was the heart of the claim. Rather, New Zealand offers no remedy at all for Scarlett's pain and suffering, which is the core damage suffered by a rape victim. And the only remedy New Zealand offers for Scarlett's on-going mental injury is treatment via a New Zealand-licensed mental health provider. *Id.* at ¶ 2.13. But as a nonresident of New Zealand living in Scotland, Scarlett has no ability to receive treatment in New Zealand. Schmeyer Dec. Ex. 2 at ¶¶4, 19-21. As such, and on the particular facts of this case, New Zealand provides only the quintessential remedy in name only, tantamount to no remedy at all.

As an initial matter, the sources Palmer relies upon for the adequacy of New Zealand as a forum are of limited applicability. Palmer cites New Zealand's Domestic Violence Act of 2015. But there is no Domestic Violence Act of 2015. There was a Domestic Violence Act of 1995, which was repealed and replaced by the Family Violence Act of 2018. But the Family Violence Act of 2018 specifically excludes an employer-employee relationship from the definition of a family relationship. Family Violence Act 2018 (2018 No 46) §§ 13-14.[1] Palmer also relies on an

---

[1] https://www.legislation.govt.nz/act/public/2018/0046/latest/whole.html

article by Rosemary Tobin, written prior to the enactment of the ACC. This source is of limited value at best, given that whatever remedies were available have been supplanted by the subsequent implementation of the ACC. And while New Zealand law may permit a victim of sexual abuse to sue for limited exemplary damages, such damages do not provide compensation for the injuries Scarlett suffered. Finally, Scarlett lacks the ability to cause Gaiman or Palmer's criminal prosecution in New Zealand.

In fact, Scarlett is currently working with an advocacy group in Scotland called the Scottish Women's Rights Center to legally remain in the UK indefinitely. Schmeyer Dec. Ex. 2 at ¶ 5. Scarlett has attested she has no intention of ever returning to New Zealand as a result of the abuse she suffered there. *Id.* at ¶ 4. Further, Scarlett has received confirmation from the ACC that no rehabilitative care is available to her because she lives abroad. *Id.* at ¶ 21. Scarlett has no intention of ever returning to New Zealand and therefore the only possible relevant remedy (rehabilitative care) is not available at all. As the Eastern District of Louisiana explained in *Sector Nav. Co. v. M/V CAPTAIN P*, No. CIV A 06-1788, 2006 WL 2946356 (E.D. La. Oct. 13, 2006), "[i]f the language in *Piper* means anything, then there must be some level at which a remedy, although available, becomes 'so clearly inadequate or unsatisfactory that it is no remedy at all.'" *Id.* at 7 (quoting *Piper Aircraft*, 454 U.S. at 254, and holding that Nigeria's draconian cap on recoveries was at that level). Whatever the status of New Zealand as an adequate forum to recover for physical injuries or economic losses in a car accident, New Zealand law provides no remedy that is available at all for non-New Zealand residents who have suffered mental harm from sexual abuse when the victim, like Scarlett, is no longer residing in New Zealand. That mental health injury is the heart of this dispute, and Scarlett cannot access the therapeutic or rehabilitative services she needs in

New Zealand while attending school in Scotland. Pavlovich Dec. ¶ 21 and Ex. 1. New Zealand is thus not an available or adequate forum.

### B.    Scarlett's Choice of Forum is Entitled to Deference

While a foreign plaintiff's decision to litigate in a U.S. defendant's home forum is entitled to less deference than a U.S. citizen's decision to litigate in the U.S., it is still entitled to some deference, because "the issue is not so much about the foreign citizenship of the plaintiff, but rather what that foreign nationality might indicate about the convenience to the plaintiff." *Deb*, 832 F.3d at 806 (presumption still applied, albeit with less force, for Canadian plaintiff than litigation in India).

Here, Scarlett's New Zealand citizenship says nothing at all about the convenience to her of litigating in New Zealand, half a world away from her home in Scotland. Rather, litigation in Massachusetts is dramatically more convenient for Scarlett, for a number of reasons discussed in detail below: it is far closer to her home in Scotland than New Zealand, allowing her to communicate with counsel and participate in the litigation remotely during reasonable hours, and making travel to the forum when necessary both more convenient and less expensive, Palmer actually resides in Massachusetts, in which she maintains a domicile and is therefore most likely to be found here for purposes of discovery and deposition. The U.S. forum also allows Scarlett to coordinate her litigation against Palmer with her litigation against Gaiman, who (like Palmer) has permanently moved from New Zealand and now resides in Wisconsin.)

Furthermore, Scarlett sued Palmer in her home forum, that increases the deference due her forum choice. The First Circuit has held that "deference accorded to plaintiff's choice of forum is enhanced when the plaintiff has chosen a forum in which the defendant maintains a substantial

presence" *Thomson Info. Servs. v. British Telcoms.*, 940 F. Supp. 20 (D. Mass. 1996)(*citing*

*Mercier v. Sheraton Int'l, Inc.*, 981 F.2d 1345 (1st Cir. 1992)).

Here, Palmer seeks to dismiss this action not in favor of litigation in Scotland, where

Scarlett (the significantly less-resourced party) resides, but in New Zealand, where she is a citizen

but does not reside. Schmeyer Dec. Ex. 2 at ¶¶ 2-3. Under the circumstances, where any forum she

chose would be distant from her home, but one (Massachusetts) is significantly more

geographically convenient than the other (New Zealand), the Court should afford her choice

significant deference. *Cf. Ramirez de Arellano v. Starwood Hotels & Resorts Worldwide, Inc.*, 448

F. Supp. 2d 520, 526 (S.D.N.Y. 2006) (that New York was significantly closer to plaintiff's Puerto

Rico home than Spain supported affording plaintiff's choice of forum deference).

## II.    New Zealand is Not a More Convenient Forum

Even were none of that true, New Zealand also is not a more convenient forum for the

parties. In analyzing the relative convenience of the forums, the Court must consider both the

private interests of the parties (the extent to which litigation in either forum would be more or less

convenient for them) and the public interests of the forums. Both strongly favor that jurisdiction

be retained in Massachusetts.

### A.    The Private Interests Favor Litigation in Massachusetts.

The private interests of the parties' favor litigation in this District. The private interests

relevant to a *forum non conveniens* analysis include "the relative ease of access to sources of proof;

availability of compulsory process for attendance of unwilling, and the cost of obtaining

attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to

the action; and all other practical problems that make trial of a case easy, expeditious and

inexpensive." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). Palmer has the burden of

establishing that the balance of the factors favors dismissal. *See Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 43–44 (3d Cir. 1988) ("It is settled that the defendant bears the burden of persuasion as to all elements of the *forum non conveniens* analysis"). She has not carried it.

First, New Zealand is a significantly less convenient geographical forum for Scarlett, Palmer, and the key non-party witness, Mr. Gaiman. None of the parties and key witness to this action – Scarlett, Mr. Gaiman, or Palmer – currently live in New Zealand. While Scarlett is a New Zealand citizen and Mr. Gaiman and Palmer are each legally allowed to travel to and be in New Zealand if they choose to, none currently lives in New Zealand.

Palmer moved from New Zealand years ago, and currently resides in Lexington, Massachusetts, as she announced on her Instagram profile on September 17, 2025 ("Hi Boston. I've moved back home. [...] After almost twenty years of non-stop travel and hotels and couch-surfing and tour busses, then living out of a suitcase in Aotearoa New Zealand for two and a half years (after getting waylaid there in 2020 when COVID hit), then living in a bit of a temporary stone hallway in Woodstock, New York, for two years…I'm finally at home base. Safe and sound here in good ol' puritan New England and ready to freak out the locals.") Schmeyer Dec. ¶ 4 and Ex. 3, and as was confirmed by the effectuation of service on Palmer personally at her home in Lexington, MA. Schmeyer Dec. ¶ 5 and Ex. 4. Scarlett is a student who resides in Scotland. Schmeyer Dec. Ex. 2 at ¶ 3. And Mr. Gaiman, by his own admission, resides and owns property in Wisconsin. Schmeyer Dec. ¶¶ 6-9 and Exs. 5-8 (Deed and property summary showing Gaiman's property ownership in Menomonie, WI and Gaiman's social media posts referencing "[his] Wisconsin house" and describing himself as an "English author in Wisconsin" who has "had a green card since 1992"). Scarlett has attested she has no intention of ever returning to New Zealand as a result of the abuse she suffered there. Schmeyer Dec. Ex. 2 at ¶ 4. Her intention is to remain

in the UK and is currently working through the process to legally stay in the U.K. indefinitely. *Id.* at ¶ 5. Further, Scarlett does not have the financial ability to return to New Zealand even if she wanted to. *Id.* at ¶ 22.

There are three – and only three – key witnesses relevant to the claims in this action. They are the only witnesses to the agreement between Mr. Gaiman and Palmer on the one hand, and Scarlett on the other, that Mr. Gaiman and Palmer would pay Scarlett to work as their live-in nanny. *Id.* at ¶ 8. Mr. Gaiman's sexual misconduct of Scarlett occurred either when he was alone with Scarlett or when he and Scarlett were accompanied only by his child; no other witness could testify to them. *Id.* at ¶ 16. Litigation in New Zealand would pose severe practical and economic hardships that litigation in Massachusetts does not. Take travel, for example. As of June 2, 2025, a round-trip flight from Edinburgh to Auckland on Wednesday June 11, returning Wednesday June 25, would cost a minimum of $1,559 and take a minimum of 24 hours, 35 minutes. Schmeyer Dec. ¶ 12 and Ex. 11. A trip on the same dates from Edinburgh to Boston would cost $568 and take just 7 hours. *Id.* at ¶ 13 and Ex. 12. Palmer, of course, would have no travel burden litigating in her home forum.

Additionally, the court should consider communication with counsel. Scarlett's lead American counsel is located in New York, Texas, and Colorado, which are 4-6 hours behind Edinburgh time, meaning they and Scarlett have overlapping business days. Auckland is 13 hours ahead of Edinburgh, meaning that Scarlett would need to routinely (and could only) communicate with any New Zealand-based counsel outside of reasonable hours (whether hers or counsel's), limiting them, as a practical matter, to (for at least one party) communications in the early morning or very late at night. Not only is that generally inconvenient, but it is also likely to meaningfully decrease both the frequency and efficacy of Scarlett's communications with counsel as compared

to litigation in this District and is therefore likely to substantively prejudice her. The same applies – but with even more force – to Palmer. Palmer lives in this District and litigation here would self-evidently be significantly more convenient, geographically, than litigation half-a-world away in New Zealand – even if she would strategically prefer to litigate in New Zealand. That is equally true for Mr. Gaiman, who will be involved in this action as a non-party witness. He already has able U.S.-based counsel defending him in Wisconsin. Schmeyer Dec. ¶10 Ex. 9. That counsel can represent him in connection with any discovery in this action but presumably is not licensed in New Zealand and therefore would be unlikely to be able to do so with respect to anything involving New Zealand litigation. Schmeyer Dec. ¶ 11 and Ex. 10.

The second major way that New Zealand litigation would be significantly less convenient than litigation in this district: the inability to coordinate litigation of Scarlett's claims against Palmer with her litigation, arising out of the same nexus of facts, of her claim against Mr. Gaiman. Scarlett's claims against Mr. Gaiman are currently being litigated in the Western District of Wisconsin. *Id.* at ¶ 4. If this action is transferred to New Zealand, Scarlett will need to retain New Zealand counsel and proceed in New Zealand against Defendant, while continuing to retain U.S.-based counsel and litigating against Mr. Gaiman in the United States. More, while Scarlett intends to seek consolidation (as a Multi-district Litigation for purposes of discovery) of this action with the litigation against Mr. Gaiman, there is no mechanism by which New Zealand litigation against Palmer could be coordinated with American litigation against of Mr. Gaiman. Schmeyer Dec. Ex. 1 at ¶ 2.38. Thus, for the core claims and core relevant witnesses, litigating Scarlett's claims against Palmer in this district would be significantly more convenient than litigating them in New Zealand.

Palmer's memorandum notes that various "key witnesses" in New Zealand can dispute Plaintiff's claims. This generalized claim, however, is woefully insufficient to carry her burden on

this issue. Palmer needs to show that the witnesses available in New Zealand are key witnesses with crucial evidence. *See Otto Candies, LLC v. Citigroup, Inc.*, 963 F.3d 1331, 1348 (11th Cir. 2020) (motion denied where movant failed to explain why witnesses it referred to were "key"); *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1231 (9th Cir. 2011) ("the focus for this private interest analysis should not rest on the number of witnesses in each locale but rather the court should evaluate the materiality and importance of the anticipated witnesses testimony")(cleaned up). Simply stating that the witnesses are "key witnesses" is insufficient for this standard. *See Otto Candies, LLC,* 963 F.3d at 1348. And, she needed to show that those witnesses would be unwilling to testify without compulsory process, and that such process would be available only if the litigation proceeded in New Zealand. *See Duha v. Agrium, Inc.*, 448 F.3d 867, 877 (6th Cir. 2006) ("When no witness' unwillingness has been alleged or shown, a district court should not attach much weight to the compulsory process factor"). She did neither.

Palmer's memorandum references a number of "key witnesses" unknown to Plaintiff who include individuals who could testify to Plaintiff's claims. Yet Palmer provides no detail about the manner in which they could supposedly dispute the claims, the specific facts alleged in the Complaint with which they would disagree, or the relevance or admissibility of their supposed testimony, from which Scarlett or the Court could assess their relative importance to the litigation for purposes of the *forum non conveniens* analysis. Nor does Palmer provide any evidence that those witnesses would be unwilling to testify without compulsory process. And, in any event, New Zealand law has mechanisms for the collection of evidence in New Zealand for use in a foreign litigation. Schmeyer Dec. Ex. 1 ¶¶ 4.6-4.8. Palmer's apparent desire to call these "individuals" to discuss the various moments they witnessed is thus woefully insufficient to carry her burden.

Thus, taken together, the private interest factors strongly favor litigation in the United States and in this district. That is particularly true where while Palmer is well-resourced, Scarlett is not, and inconvenience to her would be significantly more burdensome in comparison. *See Ramirez de Arellano*, 448 F. Supp. 2d at 530 (private interests analysis must consider "the disparity of means between the parties") (emphasis altered). The burden on Palmer of litigating in her home forum is simply not "oppressive and vexatious to" Palmer at all, let alone "out of all proportion to the plaintiff's convenience." *Gulf Oil*, 330 U.S. at 504. As such, the private interest factors do not support dismissal.

### B.    The Public Interest Factors Strongly Favor Litigation in This District

The public interest factors likewise strongly support retention of jurisdiction. As an initial matter, Palmer suggests that New Zealand law addresses Scarlett's civil claims arising from sex trafficking; however, its law provides no private right of action for human trafficking. Schmeyer Dec. Ex. 1 at ¶ 2.27. That alone should be dispositive, given the public policy preferences that motivated and are embodied in the TVPA. 15 *Cf. Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 244 F. Supp. 2d 289, 339 (S.D.N.Y. 2003) (citing "the strong United States interest in vindicating international human rights violations" as militating against *forum non conveniens* dismissal of Alien Tort Statute action), *rejected on other grounds by Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 140 (2d Cir. 2010) (*Presbyterian* court erred in its analysis of corporate liability under international law), *aff'd*, 569 U.S. 108 (2013). Those public policy concerns were extensively discussed by the Fourth Circuit in *Roe v. Howard*, 917 F.3d 229 (4th Cir. 2019). Congress passed the TVPA to "combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominantly women and children, to ensure just and effective punishment of traffickers, and to protect their victims." *Roe*, 917 F.3d at 235– 36, quoting

TVPA, Pub. L. No. 106-386, § 102(a), 114 Stat. 1464, 1466 (codified at 22 U.S.C. § 7101(a)). Congress "repeatedly emphasized the transnational nature" of the problem and the enforcement challenges posed by its international scope. *Id.* The statute was first passed in 2000 and then amended in 2003 to add a private right of action given "the challenges that remained 'in responding to the needs of victims of trafficking in the United States and abroad." *Roe*, 917 F.3d at 236 (emphasis added), quoting Trafficking Victims Protection Reauthorization Act of 2003, Pub. L. No. 108-193, §2(2), 117 Stat. 2875.

In 2006, Congress expanded the reach of the TVPA to cover extraterritorial conduct by Federal employees and contractors, and in 2008, it further expanded the TVPA to cover extraterritorial conduct by U.S. nationals or permanent residents (such as Palmer). *Id.* at 237. As the Fourth Circuit explained, the "purpose, structure, history, and context of the TVPA" all make clear that the civil remedy of Section 1595 was intended to be available to a foreign plaintiff injured by foreign conduct so long as the predicate offense is one that applies extraterritorially. *Id.* at 242 ("the TVPA represents a far-reaching congressional effort to combat transnational human trafficking on numerous fronts, including by expanding the civil claims and remedies available to its victims"); *accord U.S. v. Baston*, 818 F.3d 651, 671 (11th Cir. 2016) (holding that "Congress has the power [under the Foreign Commerce Clause] to require international sex traffickers to pay restitution to their victims even when the sex trafficking occurs exclusively in another country.").

In other words, Congress passed – and the President signed into law – a statutory regime specifically designed to allow victims of foreign conduct to seek redress in United States courts. It did so based on the United States' strong interest in combatting human trafficking by U.S. nationals and permanent residents, and in (and after) recognition of the fact that criminal law alone was insufficient to address the problem. To superimpose onto *that* regime a standard *forum non*

*conveniens* analysis, in which a foreign plaintiff's suit over foreign conduct is shunted out of the American courts for reasons of convenience, would be to essentially write that policy choice out of existence. Few if any cases of extraterritorial conduct encompassed by the TVPA would not, for example, turn on conduct in a foreign location, with witnesses and documents primarily located abroad. Few if any would involve a U.S. citizen plaintiff suing in her home forum. Few if any would fail to require a U.S. jury to pass on foreign conduct or involve no issues of foreign law. The United States, in other words, has directed that claims such as Scarlett's should be heard here, in U.S. courts, as a matter of U.S. public policy. The doctrine of *forum non conveniens* cannot override that – and even if it could in theory, given such a declaration of U.S. policy the public interest factors overwhelmingly favor retention of jurisdiction, such that the balance of private convenience would need to tip even more overwhelmingly in Palmer's favor to overcome that. As shown above, they do not.

### C.   The Interests of Justice Favor the District of Massachusetts.

Finally, the interests of justice strongly favor retaining jurisdiction. Consideration of the interests of justice includes judicial economy. *Regents of the University of California v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed.Cir.1997) ("Eli Lilly"). The interests of justice may be determinative to a particular transfer motion even if the convenience of the witnesses and parties might call for a differed result. *See Eli Lilly*, 119 F.3d at 1565 (district court did not abuse its discretion in denying transfer of case after finding judicial economy would be served by retaining the case); *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220–21 (7th Cir.1986). Judicial economy will be served here because the claims against the Defendant are under United States law, which comes with significant policy considerations to prevent sexual abuse victims from being trafficked; the Defendant is local to this District; it is far more convenient and less costly for the Plaintiff to

travel to this District; and the primary non-party witness, Mr. Gaiman, resides in the USA, in Wisconsin.

Here, that weighs in favor of retaining jurisdiction, not transfer to New Zealand. Indeed, even if the Court determines that New Zealand is technically both an adequate and available forum, that will not make transfer of this case and this Plaintiff's claims just. As Mr. Wass explains, cover under New Zealand's accident compensation scheme would not need to involve any adjudication, public or private, of Scarlett's factual claims. Schmeyer Dec. Ex. 1 at ¶ 2.11. Further, as discussed more fully herein, any relevant remedy under the ACC is unavailable to Scarlett because she lives abroad. As a practical matter, dismissal of this action in favor of proceedings in New Zealand will mean that there is no prospect that Palmer will be held accountable for her conduct in the abuse of Scarlett; that is not in the interest of justice. *Id.* at ¶ 2.16. Simply put, this is not an accident claim where the question is private allocation of loss, or a commercial dispute. Rather, Scarlett seeks redress for Palmer's predatory participation in the economic abuse that facilitated Gaiman's assault of Scarlett, and in violation of this country's policy against its residents engaging in human trafficking. The interests of justice demand that Scarlett's claims be adjudicated, not shunted off to an administrative procedure behind closed doors. Even if none of the other factors favored Scarlett – and, as noted above, they each do – that alone would be reason enough to deny the motion.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Defendant's Motion.

DATED: June 4, 2025

Respectfully submitted,

/s/ Mitchell J. Matorin
Mitchell J. Matorin (BBO# 649304)
MATORIN LAW OFFICE, LLC
18 Grove Street, Suite 5
Wellesley, MA 02482
Telephone: (781) 453-0100
E-mail: mmatorin@matorinlawoffice.com

Thomas Neville (Pro Hac Vice)
Dylan Schmeyer (Pro Hac Vice)
Akiva M. Cohen (Pro Hac Vice)
KAMERMAN   UNCYK   SONIKER   &
KLEIN P.C.
1700 Broadway
New York, New York 10019
Telephone: (212) 400-4930
E-mail: tneville@kusklaw.com
E-mail: dschmeyer@kusklaw.com
E-mail: acohen@kusklaw.com

Michael Nimmo (Pro Hac Vice)
WAHLBERG, WOODRUFF, NIMMO &
SLOANE, LLP
4601 DTC Boulevard, Suite 950
Denver, CO 80237
Telephone: (303) 571-5302
E-mail: michael@denvertriallawyers.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on June 4, 2025, a true and correct copy of the foregoing Plaintiff Scarlett Pavlovich's Response to Defendant Amanda Palmer's Motion to Dismiss Plaintiff's Complaint on the Basis of *Forum Non Conveniens* was filed through the CM/ECF portal, which will send electronic notification of this filing to all counsel of record in the present action.

/s/Mitchell J. Matorin
Mitchell J. Matorin