IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

SCARLETT PAVLOVICH,

                Plaintiff,

        -against-

AMANDA PALMER,

                Defendant.

C.A. NO. 1:25-CV-10263F

---

**PLAINTIFF SCARLETT PAVLOVICH'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

---

Mitchell J. Matorin (BBO# 649304)
MATORIN LAW OFFICE, LLC
18 Grove Street, Suite 5
Wellesley, MA 02482
Telephone: (781) 453-0100
e-mail: mmatorin@matorinlawoffice.com

Michael Nimmo CO Bar #36947
WAHLBERG, WOODRUFF, NIMMO &
SLOANE, LLP
4601 DTC Boulevard, Suite 950
Denver, CO 80237
Telephone: (303) 571-5302
e-mail: michael@denvertriallawyers.com

Thomas Neville (pro hac vice)
Dylan Schmeyer (pro hac vice)
Akiva M. Cohen (pro hac vice)
KAMERMAN UNCYK SONIKER &
KLEIN P.C.
1700 Broadway
New York, New York 10019
Telephone: (212) 400-4930
e-mail: tneville@kusklaw.com
e-mail: dschmeyer@kusklaw.com
e-mail: acohen@kusklaw.com

Dated: June 4, 2025

# Table of Contents

FACTUAL BACKGROUND...........................................................................................................1

LEGAL AUTHORITY ..............................................................................................................2

ARGUMENT............................................................................................................................2

I.    Plaintiff's Claims under 18 U.S.C. § 1591 and § 1595(a) are Well-Pled.............................2

    A.    Plaintiff's Direct Liability Claim under § 1591 and § 1595 is Well-Pled.............................3

        1.    Palmer knowingly trafficked Scarlett in foreign commerce        4

        2.    Palmer knew that Scarlett would be coerced into commercial sex.        6

        3.    Palmer recklessly disregarded the fact that Gaiman caused Scarlett to engage in a commercial sex act.        7

    B.    Plaintiff's claim of Palmer's beneficiary liability is well-pled. ..............................................8

        1.    Palmer participated in a venture.        10

        2.    Palmer knew or should have known the venture was a violation of Sex Trafficking.        11

II.   Plaintiff's § 1589 Civil Conspiracy Claim is Well-Pled. (Count 2)....................................12

    A.    Palmer preyed upon Plaintiff's economic status to coerce her to provide free labor......13

    B.    Scarlett was unable to escape her position with Palmer.....................................................14

III.  Plaintiff's § 1590(a) and § 1595(a) Civil Conspiracy Claim is Well-Pled..........................15

IV.   Plaintiff's § 1594 and § 1595(a) Civil Conspiracy Claim is Well-Pled. .............................17

V.    Plaintiff's Negligence Claim is Well-Pled. ...........................................................................19

    C.    Palmer owed Scarlett a duty to protect her from Gaiman. .................................................19

VI.   The Court should retain supplemental jurisdiction over Scarlett's state law tort claim. ..............20

CONCLUSION.........................................................................................................................20

# Table of Authorities

**Cases**

*A.D. v. Choice Hotels Int'l, Inc.*, 2023 U.S. Dist. LEXIS 150397, (M.D. Fla. Aug. 25, 2023) ................... 9

*Acevedo v. eXp Realty, LLC*, 713 F.Supp.3d 740,(C.D. Cal. 2024) ................................................... 3, 4, 6, 7

*Alam v. Miller Brewing Co.*, 709 F.3d 662 (7th Cir. 2013) ................................................................. 2

*Ardolf v. Weber*, 332 F.R.D. 467 (S.D.N.Y., 2019) ........................................................................ 4, 5

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................... 2

*Baldia v. RN Express Staffing Registry LLC*, 633 F. Supp. 3d 693 (S.D.N.Y. 2022) .......................... 12, 13

*Bates v. Sequel Youth & Family Servs., LLC*, 2024 U.S. Dist. LEXIS 118421
  (N.D. Ala. July 3, 2024) ........................................................................................................... 17

*Beal v. Broadard*, 2005 Mass. Super. LEXIS 125 (Feb. 4, 2005) ...................................................... 19, 20

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................................. 2

*Burrell v. Staff*, 60 F.4th 25 (3d Cir.) ........................................................................................... 7

*Chesler v. Chesler*, 2025 U.S. Dist. LEXIS 88360, (D.N.H. May 5, 2025) ......................................... 14

*Ditullio v. Boehm*, 662 F.3d 1091 (9th Cir. 2011) ........................................................................... 3

*Doe (K.E.C.) v. G6 Hospitality, LLC*, 750 F.Supp.3d 719 (E.D. Tex. 2024) ....................................... 10, 12

*Doe (K.H.) v. R-Roof VI LLC*, U.S. Dist. LEXIS 7146 (E.D. Mich. Jan. 14, 2025) ............................ 10

*Doe A.L.G. v. Wyndham Hotel & Resorts, Inc.*, 2024 U.S. Dist. LEXIS 212384
  (W.D. Tex. Nov. 21, 2024) ....................................................................................................... 12

*Doe v. Mindgeek*, 558 F. Supp. 3d 828, (C.D. Cal. 2021) ................................................................. 3

*Doe v. Radisson Hosp., Inc.*, 2025 U.S. Dist. LEXIS 19682 (W.D. Tex. Jan. 21, 2025) ...................... 9

*Doe v. Wyndham Hotels & Resorts, Inc.*, 2025 U.S. Dist. LEXIS 40993, (E.D. Va. Mar. 6, 2025) ......... 10

*G.G. v. Salesforce.Com, Inc.*, 76 F.4th 544 (7th Cir. 2023) ............................................................. 10, 11, 12

*Glagola v. MacFann*, 701 F. Supp. 3d 274 (W.D. Pa. 2023) ............................................................. 7

*Gonzalez v. CoreCivic, Inc.*, 986 F.3d 536 (5th Cir. 2021) ............................................................... 7

*Johnson v. Brown & Williamson Tobacco Corp.*, 122 F.Supp.2d 194 (D. Mass. 2000) ....................... 2

*K.B. v. Inter-Continental Hotels Corp.*, 2020 U.S. Dist. LEXIS 250721 (D.N.H. Sep. 28, 2020) .... 8, 10, 11

*L.M.H. v. Red Roof Inns*, 2025 WL 961720 (S.D. Ohio 2025) .......................................................... 4

*Lozano v. Alvarez*, 697 F.3d 41 (2d Cir. 2012) ............................................................................... 4

*M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959 (S.D. Ohio 2019) ............................ 9, 10, 11

*Martinez v. Calimlim*, 651 F.Supp.2d 852 (E.D.Wis.2009) ............................................................. 18

*Mouloki v. Epee*, 262 F. Supp. 3d 684 (N.D. Ill. 2017) ................................................................... 4

*Muchira v. Al-Rawaf*, 850 F.3d 605 (4th Cir. 2017) ....................................................................... 13, 17

*Noble v. Weinstein*, 335 F. Supp. 3d 504 (S.D.N.Y. 2018) ............................................................... 7

*Nunag-Tanedo v. E. Baton Rouge Par. Sch. Bd.*, 790 F. Supp. 2d 1134 (C.D. Cal. 2011) ................... 15

*Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, (1st Cir. 2011) ................................................... 2, 5

*Paguirigan v. Prompt Nursing Emp't Agency LLC*, 286 F. Supp. 3d 430 (E.D.N.Y. 2017) ................. 13

*S.J. v. Choice Hotels International, Inc.*, 473 F.Supp.3d 147 (E.D.N.Y., 2020) ................................. 11

*United States v. Dann*, 652 F.3d 1160 (9th Cir. 2011) .................................................................... 18

*United States v. Hornbuckle*, 784 F.3d 549 (9th Cir. 2015).............................................................7

United States v. Rivera, 799 F.3d 180 (2d Cir. 2015)......................................................................18

*United States v. Todd*, 627 F.3d 329 (9th Cir. 2010)........................................................................6

*Velez v. Sanchez*, 754 F. Supp. 2d 488 (E.D.N.Y. 2010) ..............................................................16

**Statutes**

18 U.S.C. § 1589.............................................................................................................12, 13, 17

18 U.S.C. § 1590.................................................................................................................17, 18

18 U.S.C. § 1591.................................................................................................................passim

18 U.S.C. § 1593.......................................................................................................................3

18 U.S.C. § 1594......................................................................................................................17

18 U.S.C. § 1595.........................................................................................................3, 8, 12, 17

28 U.S.C. § 1367.....................................................................................................................20

## FACTUAL BACKGROUND

Scarlett Pavlovich was 22 years old and living in New Zealand when Neil Gaiman repeatedly sexually assaulted her while she provided free childcare and labor for Gaiman and Amanda Palmer's child. *See* Dkt. 1 at ¶8-253. Gaiman has a decades-long history of sexual misconduct. *Id.* at ¶ 10. Since at least 2015, Palmer has been aware of Gaiman's pattern of sexual abuse. *Id.* at ¶ 15.

Scarlett and Palmer met in Auckland, New Zealand, in 2020. *Id.* at ¶ 18. In February of 2022, Palmer asked Scarlett to babysit her child for the weekend at her home on Waiheke Island. *Id.* at ¶36. On February 4, 2022, Scarlett arrived at Gaiman's house to babysit for Gaiman and Palmer's child. *Id.* at ¶ 42. Unbeknownst to Scarlett, Palmer had purchased tickets to a film event and suggested that Scarlett attend the event with Gaiman after dropping the child off at a family friend's house for a playdate. *Id.* at ¶46. Gaiman insisted, despite Scarlett's unwillingness, that Scarlett bathe in an outdoor bathtub at his home, *id.* at ¶ 51-54, where he forcibly penetrated and raped her. *Id.* at ¶56-84.

Palmer knew Gaiman had an extensive history of sexual misconduct and knew that Gaiman had a need to humiliate his female sexual partners. *Id.* at ¶ 90-97. Palmer knew or should have known that Gaiman would engage in non-consensual sexual acts with Scarlett. *Id.* at ¶ 97-99. Gaiman told Scarlett that Palmer "told me that I couldn't have you" and that Gaiman couldn't have "this one." *Id.* at ¶ 85-97. Palmer either knew or should have known that would fuel his desire to sexually assault Scarlett. *Id.* at ¶ 97-99. Palmer never disclosed any of Gaiman's history of prior sexual misconduct or the danger that Gaiman posed to Scarlett. *Id.* at ¶94-96.

After the weekend of February 4, 2022, Palmer formally offered Scarlett a job as a live-in nanny. *Id.* at ¶ 111-118. Although Palmer made promises to pay Scarlett, she did not. *Id.* at ¶121. In essence, Palmer and Gaiman kept Scarlett as an economic hostage knowing that Scarlett was economically insecure. *Id.* at ¶122. During her time as a live-in nanny, Gaiman repeatedly raped and sexually assaulted Scarlett. *Id.* at ¶ 123. Palmer aided and abetted Gaiman's sexual assault and rape by

1

providing assistance to Gaiman when she knew or should have known Gaiman was subjecting Scarlett to nonconsensual sex acts. *Id.* at ¶ 181. Palmer intentionally withheld payment from Scarlett in order to force Scarlett to become reliant on Palmer and Gaiman and to keep Scarlett from escaping. *Id.* at ¶207-210. Palmer and Gaiman intended to have Scarlett trapped, vulnerable, and penniless because it would leave Scarlett without a real chance to defend herself or escape. *Id.*

## LEGAL AUTHORITY

Under Fed. R. Civ. P. 12(b)(6), "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (cleaned up). A complaint need only contain a "sufficient factual matter" to state a claim for relief that is actionable as a matter of law and "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009).

The court must accept all factual averments in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Johnson v. Brown & Williamson Tobacco Corp.*, 122 F.Supp.2d 194, 198 (D. Mass. 2000). "A claim is facially plausible if, after accepting as true all non-conclusory factual allegations, the court can draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). A complaint should survive a motion to dismiss "even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Alam v. Miller Brewing Co.,* 709 F.3d 662, 666 (7th Cir. 2013) (quoting *Twombly*, 550 U.S. at 556).

## ARGUMENT

### I.    Plaintiff's Claims under 18 U.S.C. § 1591 and § 1595(a) are Well-Pled.

Scarlett has plead sufficient factual averments for this Court to draw the reasonable inference that Palmer is liable under the Trafficking Victims Protection and Reauthorization Act ("TVPRA"). Palmer, by and through her memorandum, attempts to imply, among other things, that liability under

the TVPRA requires Palmer to have either engaged in the sexual assault, been present for the sexual assault, or heard about the sexual assault. This, however, simply misapprehends liability under the TVPRA and inconsistent with the case law.

The TVPRA's purpose is to combat trafficking in persons, predominately women and children, "to ensure just and effective punishment of traffickers, and to protect their victims." *Ditullio v. Boehm*, 662 F.3d 1091, 1094 (9th Cir. 2011). The TVPRA has been repeatedly amended to expand coverage and create civil remedies, codified under 18 U.S.C. § 1595, against traffickers by "extending liability *to those that benefit* from what they should have known was a trafficking venture." *Acevedo v. eXp Realty, LLC*, 713 F.Supp.3d 740, 763 (C.D. Cal. 2024) (*emphasis added*).

18 U.S.C. § 1591 prohibits individuals from "knowingly . . . recruit[ing], entic[ing], harbor[ing], transport[ing], provid[ing], obtain[ing], . . . or solicit[ing] by any means a person or benefits, financially, or by receiving anything of value …knowing, . . . or . . .in reckless disregard of the fact, that means of force, fraud, coercion . . . or any combination of such means will be used to cause the person to engage in a 'commercial sex act.'" A commercial sex act is "any sex act, on account of which anything of value is given to or received by any person." 18 U.S.C. § 1591(e)(3). "Whoever knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in any act in violation of this chapter, knowing or in reckless disregard of the fact that the venture has engaged in such violation, shall be fined under this title or imprisoned in the same manner as a completed violation of such section." 18 U.S.C. § 1593A. Victims of violations of 18 U.S.C. § 1591 may pursue civil claims, under 18 U.S.C. § 1595, against either the direct perpetrators of the trafficking ("direct liability") or those who knowingly financially benefit from the trafficking ("beneficiary liability"). *Doe v. Mindgeek*, 558 F. Supp. 3d 828, 835 (C.D. Cal. 2021).

A. **Plaintiff's Direct Liability Claim under § 1591 and § 1595 is Well-Pled**

Direct liability simply requires the Plaintiff to allege that the Defendant : 1) knowingly and in

interstate or foreign commerce recruited, enticed, harbored, transported, provided, obtained, or maintained by any means a person; (2) knowing, or in reckless disregard of the fact, that means of force, threats of force, fraud … or any combination of such means will be used"; and (3) "cause the person to engage in a commercial sex act." *Acevedo*, 713 F.Supp.3d at 765.

The TVRPA does not define the terms "entice" or "recruit" in § 1591(a). *Ardolf v. Weber*, 332 F.R.D. 467, 474 (S.D.N.Y., 2019). Courts will "normally construe [undefined statutory terms] in accord with [their] ordinary or natural meaning." *Lozano v. Alvarez*, 697 F.3d 41, 56 (2d Cir. 2012). In this regard, the term "entice" in the TVRPA means that the perpetrator attracts the victim by offering something that arouses hope or desire. *Ardolf*, 332 F.R.D. at 474. Similarly, the term "recruit" in the TVRPA means that the perpetrator somehow secured the services of the victims. *Id.* A defendant is liable under the TVRPA for a single act of enticement or recruitment if it is successful. *Id.* "Providing lodging to someone for the purposes of obtaining her labor or services against her will" constitutes "harboring" under the TVPRA. *L.M.H. v. Red Roof Inns*, No. 2:24-cv-1823, 2025 WL 961720, at *10 (S.D. Ohio 2025); *See Mouloki v. Epee*, 262 F. Supp. 3d 684, 698 (N.D. Ill. 2017).

Palmer recruited, enticed, harbored, transported, provided, and obtained, Scarlett to procure her labor and services under false pretenses causing her to engage in a commercial sex act.

1.   Palmer knowingly trafficked Scarlett in foreign commerce

Scarlett met Amanda Palmer when she was 22 years old in Auckland, New Zealand where Scarlett was living. *See* Dkt. 1 at ¶18. At that time, she had no money, without stable means of income or secure housing, and in a fragile state with her mental health. *Id.* at ¶28-33. Palmer was aware that Scarlett was economically insecure. *Id.* at ¶30. Scarlett had also coped with substantial mental health difficulties over the years. *Id.* at ¶31. Scarlett, who is a lesbian, was sexually assaulted by a 45-year-old man when she was 15 years old. *Id.* at ¶32. As they became acquainted, Scarlett and Palmer discussed Scarlett's mental health and Palmer knew that Scarlett had been suffering from mental health

difficulties. *Id.* at ¶34-35.

With this knowledge about Scarlett's vulnerabilities, on February 1, 2022, Palmer asked Scarlett if she could babysit for her and Gaiman's child for the weekend on Waiheke Island. *Id.* at ¶36-37. At the time, Palmer and Gaiman were separated and living in homes that were near each other, on Waiheke Island and babysitting for Palmer and Gaiman's child would entail spending time at both houses. *Id.* at ¶39. Palmer promised Scarlett would be paid, *id.* at ¶40 and Scarlett agreed. *Id.* at ¶41.

Waiheke Island is only accessible from Auckland via a forty-minute ferry ride, which costs between $40 NZD and $59 NZD depending on the time. *Id.* at ¶24-25. On the afternoon of February 4, 2022, Scarlett arrived by ferry and went to Gaiman's house to babysit for Gaiman and Palmer's child at Palmer's request. *Id.* at ¶42. That night Scarlett was raped by Gaiman. After the weekend, Palmer, acting for herself and Gaiman, formally offered Scarlett a job as a live-in nanny. *Id.* at ¶111. Palmer encouraged Scarlett to give up her prior job to accept this role. *Id.* at ¶116.

A defendant is liable under the TVRPA for a single act of enticement or recruitment if it is successful. *Ardolf*, 332 F.R.D. at 474. Here Palmer's conduct amounted to multiple acts of enticement or recruitment. Palmer obtained, enticed, and recruited Scarlett when Palmer secured Scarlett's services by offering Scarlett the hope of a paid job and place to live. Palmer harbored Scarlett by providing her housing for her services against her will as she was made false promises that she would be paid for her nannying services.

As set forth in the case law and accepting as true all the non-conclusory factual allegations plead in Scarlett's Complaint, it is clear this Court can draw the reasonable inference that Palmer did in fact recruit, entice, harbor, transport, provide, and obtain Scarlett for services. *See Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). Scarlett's claim is adequately pleaded to establish that Palmer is directly liable under the TVPRA.

2. <u>Palmer knew that Scarlett would be coerced into commercial sex.</u>

The TVPRA requires that the defendant know or act in reckless disregard of the fact "that means of force, threats of force, fraud, coercion . . . or any combination of such means will be used to cause the person to engage in a commercial sex act[.]" 18 U.S.C. § 1591(a). The plain language of § 1591(a) requires Plaintiff to plausibly allege that Palmer knowingly enticed Scarlett to work for her and Gaiman, and Palmer either knew that means of force or fraud would be used to cause a commercial sex act to take place or that Palmer recklessly disregarded the fact that Gaiman would use force, threats of force, or coercion to cause Scarlett to engage in a commercial sex act. *Acevedo*, 713 F. Supp. 3d at 769; s*ee United States v. Todd*, 627 F.3d 329, 333-34 (9th Cir. 2010). This does not impose another "layer" of knowledge on the pleader, but merely requires an allegation of awareness that, at the initial recruitment or enticement stage, certain prohibited means will be employed to cause a commercial sex act. *Acevedo*, 713 F. Supp. 3d at 769. This element is sufficiently pled by showing "a state of mind in which the [defendant] is familiar with a pattern of conduct." *Id.*

Plaintiff has alleged in her Complaint that Palmer knew of Gaiman's prior sexual misconduct. Dkt. 1 at ¶15 and ¶90. Plaintiff has alleged Palmer knew about Gaiman's sexual predilections and need to humiliate his female sexual partners. I*d.* at ¶91 Further, Plaintiff has alleged that Palmer was aware that Gaiman posed a danger to Scarlett. *Id.* at ¶89. This demonstrates that Palmer was familiar with a pattern of conduct. *See Id.* at 769. Palmer either knew or was kidding herself and recklessly disregarded the fact that Gaiman was going to assault Scarlett. *See*, *Moore v. Rubin*, 724 F. Supp. 3d 93, 100 (E.D.N.Y. 2024) (holding that the fact that multiple victims had told the defendant that he was exceeding their consent was a sufficient basis for a jury to conclude that the defendant "was kidding himself, *i.e.*, that he was certainly reckless in disregarding that likelihood."). Given her conduct and knowledge as alleged in the Complaint, Palmer knew or recklessly disregarded these facts that Gaiman had a history of conduct that included force or fraud to commit non-consensual acts of sexual abuse

and was likely to make Scarlett his victim.

       3.    <u>Palmer recklessly disregarded the fact that Gaiman caused Scarlett to engage in a commercial sex act.</u>

While Palmer points to the "paradigmatic example" of "forced prostitution" to define sex trafficking, the term "sex trafficking" under the TVPRA has a much broader meaning. *Glagola v. MacFann*, 701 F. Supp. 3d 274, 284 (W.D. Pa. 2023). "Section 1591(a) 'targets commercial sex activity that is forced or coerced; it does not address commercial sex activity generally." *Id.* Specifically, "the TVPRA is not limited to 'serious cases of physical and sexual exploitation of trafficked women and children.'" *Burrell v. Staff*, 60 F.4th 25, 39 (3d Cir.), *cert. denied sub nom. Lackawanna Recycling Ctr., Inc. v. Burrell*, 143 S. Ct. 2662, 216 L. Ed. 2d 1239 (2023) (quoting the defendants' brief). "Rather, it applies to '[w]hoever' falls within the reach of its plain text." *Id.* (*citing Gonzalez v. CoreCivic, Inc.*, 986 F.3d 536, 539 (5th Cir. 2021)). "Commercial sex act" is defined as "any sex act, on account of which anything of value is given to or received by any person." 18 U.S.C. § 1591(e)(3). Such broad language "requires a liberal reading." *Noble v. Weinstein*, 335 F. Supp. 3d 504, 521 (S.D.N.Y. 2018). "[P]erforming sex for money (or a rent waiver) is a commercial sex act." *Glagola*, at 284. The statute does not require that the perpetrator commit the sex act himself. 18 U.S.C. § 1591(a); *Acevedo*, 713 F. Supp. 3d at 771. "Rather, the relevant statutory language requires the defendant take certain action (i.e., 'entice' the victim) knowing [*or in reckless disregard of the fact*] that she 'will be caused to engage in a commercial sex act.'" *Id.* "This future verb tense 'indicates that **a sex act does not have to occur**' and the 'offense was complete when [the defendant] acted with the requisite knowledge'[.]" *Id.* (*emphasis added*). See also *United States v. Hornbuckle*, 784 F.3d 549, 553–54 (9th Cir. 2015) (commission of a sex act or sexual contact is not an element of 18 U.S.C. § 1591).

The facts and allegations as pleaded establish that Palmer enticed Scarlett with the requisite awareness that Scarlett would be caused to engage in a commercial sexual act. Since at least 2015,

five years before meeting Scarlett, Palmer was aware of Gaiman's pattern of sexual misconduct. *See* Dkt. 1 at ¶ 15. Palmer knew about Gaiman's sexual predilections and need to humiliate his female sexual partners – with or without their consent. *Id.* at ¶ 91. Palmer also knew that Scarlett was an abuse survivor who had suffered mental health challenges in the remote and recent past. *Id.* at. ¶92. Palmer was clearly aware of the danger that Gaiman posed to Scarlett. *Id.* at ¶93. Yet, Palmer said nothing to Scarlett about her concerns about what Gaiman would do. Id. at ¶94. Palmer said nothing to Scarlett about her knowledge of Gaiman's prior sexual misconduct. *Id.* at ¶ 95. Palmer said nothing to Scarlett about Gaiman's need to humiliate and degrade his female sexual partners because, as he put it, it was the only way he could "get off." *Id.* at ¶ 96.

Knowing that Gaiman had a history and pattern of committing sexual misconduct, Palmer enticed Scarlett by offering hope of a paid job and housing. Palmer had the requisite knowledge that by enticing Scarlett with the promise of housing and money to come to Waiheke Island for nannying services, that Scarlett would be caused to engage in a commercial sexual act with Gaiman. In addition to the factual allegations plead and set forth herein, this is further confirmed by Palmer's and Gaiman's own words. Palmer told Gaiman that Gaiman could not have "this one." *Id.* at ¶87. Gaiman said to Scarlett, in effect, "Amanda told me I couldn't have you" but I knew I had to have you." *Id.* at ¶85-86.

**B.    Plaintiff's claim of Palmer's beneficiary liability is well-pled.**

A Defendant is liable under a theory of "beneficiary liability" if (1) the person "knowingly benefited, financially or by receiving anything of value," (2) from participating in a venture, (3) which he or she "knew or should have known has engaged in an act in violation of [the TVPRA]." 18 U.S.C. § 1595(a); *K.B. v. Inter-Continental Hotels Corp.*, No. 19-cv-1213-AJ, 2020 U.S. Dist. LEXIS 250721, at *10 (D.N.H. Sep. 28, 2020); *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 964 (S.D.

Ohio 2019); *Acevedo*, 713 F.Supp.3d at 763. Palmer knowingly benefited from this venture.

A plaintiff must allege the defendant "was aware that it was benefitting in some way from its participation in the venture . . . [but] the benefit need not take the form of profits that are the specific result of a sex-trafficking venture." *Doe v. Radisson Hosp., Inc.*, No. A-23-CV-1456-DII, 2025 U.S. Dist. LEXIS 19682, at *15 (W.D. Tex. Jan. 21, 2025). "Knowingly benefits" means "an awareness or understanding of a fact or circumstance; a state of mind in which a person has no substantial doubt about the existence of a fact." *A.D. v. Choice Hotels Int'l, Inc.*, No. 2:22-cv-647-JES-NPM, 2023 U.S. Dist. LEXIS 150397, at *8 (M.D. Fla. Aug. 25, 2023). However, in the absence of more stringent statutory pleading requirements, knowledge "may be alleged generally." *Id.* Under Section 1595(a) a defendant may benefit "financially or by receiving anything of value."

Scarlett has properly alleged that Palmer received a financial benefit from her participation in a venture. In paragraph 277 of Plaintiff's Complaint, Scarlett alleged as follows "Defendant received a financial benefit on account of the sexual exploitation they subjected Scarlett to, in the form of uncompensated childcare for their young son." *See* Dkt. 1. This allegation alone is sufficient under 18 U.S.C. 1595(a). Yet the Complaint sets forth additional factual allegations of Palmer's knowing receipt of a financial benefit. In paragraph 179, Scarlett alleges that "Gaiman and Palmer knowingly benefitted (financially and otherwise)". In paragraph 268, Scarlett alleges that "Defendant entered into an agreement with Scarlett for Scarlett to provide childcare services to Defendant, and Scarlett was then compelled to endure commercial sex acts to keep that job and the housing that came with it." In paragraph 278, the Complaint alleges "Scarlett was forced to participate in these events because if she refused, she would have become homeless and would not have been compensated for her labor." In paragraph 280, the Complaint "Palmer knew or should have known that Gaiman had promised future career support to his previous victims to make them submit to commercial sex acts." When taken in the light most favorable to Plaintiff, all these allegations have been sufficiently pleaded to establish

that Palmer knew she would obtain a financial benefit.

    1.   <u>Palmer participated in a venture.</u>

A "venture" is defined, under 18 U.S.C. § 1591(e)(6), as "any group of two or more individuals associated in fact, whether or not a legal entity." A Defendant has "participated in a venture" for criminal liability, under 18 U.S.C. § 1591, when the defendant "knowingly assisting, supporting, or facilitating a violation" of § 1591(a)(1). 18 U.S.C. § 1591(a)(1); *Doe (K.E.C.) v. G6 Hospitality, LLC*, 750 F.Supp.3d 719, 728 (E.D. Tex. 2024). For the purposes of civil liability under the statute, however, courts have generally declined to apply the criminal definition of "participating in venture". *K.B. v. Inter-Continental Hotels Corp.*, 2020 U.S. Dist. LEXIS 250721 (D.N.H. Sep. 28, 2020); *Doe (K.H.) v. R-Roof VI LLC*, 2025 U.S. Dist. LEXIS 7146, at *10 (E.D. Mich. Jan. 14, 2025); *Doe v. Wyndham Hotels & Resorts, Inc.*, 2025 U.S. Dist. LEXIS 40993, at *10 (E.D. Va. Mar. 6, 2025). Rather, the element of "participated in a venture" is satisfied, for beneficiary civil liability, simply if the defendant had a direct association or a business relationship with the trafficker. An individual need not engage in an "overt act," such as the sexual assault or sexual trafficking itself, to have participated in such a venture. *K.B.*, 2020 U.S. Dist. LEXIS 250721, at *9. Participation merely requires at least one participant therein to commit a criminal violation while the other participant negligently facilitates the venture's activities. *See G.G. v. Salesforce.Com, Inc.*, 76 F.4th 544, 559 (7th Cir. 2023).

Here, Palmer need not have committed the sexual assault for there to have been a considered participating in a venture with Gaiman. *See M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F.Supp.3d 959, 971 (S.D. Ohio, 2019). It is sufficient for Palmer to have "participated in a venture" by "knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)," which definition encompasses her actual conduct. Gaiman was Palmer's husband when she enticed and recruited Scarlett. Dkt. 1 at ¶14. Palmer shares a child with Gaiman, and she procured Scarlett's services to provide childcare while knowing that Gaiman was likely to sexually assault her. *Id.* at ¶17. Palmer supported, harbored, and

facilitated the trafficking of Scarlett by and through her business relationship with Scarlett and familial

relationship with Gaiman. *See Dkt.* 1. Further, Palmer received the benefit of Scarlett's labor and 24/7

availability during the time when she was subjected to Gaiman's abuse. A venture is simply "any group

of two or more individuals *associated in fact*, whether or not a legal entity." 18 U.S.C. §

1591(e)(6)(emphasis added). Unlike Palmer's implication, this definition does not require that this

Court find that the "group" as a whole engaged in the underlying violation which gave rise to claims

under 18 U.S.C. § 1591. *See K.B.*, 2020 U.S. Dist. LEXIS 250721.

Defendant Palmer incorrectly relies on the courts holding in *Afyare* to suggest that she must

have participated in the act of sexual trafficking to have "participated" in a venture. *See* Dkt. 13. The

holding in *Afyare* does not apply here because in *Afyare* the court was analyzing a criminal venture

rather than a civil venture. In *S.J. v. Choice Hotels International, Inc.*, 473 F.Supp.3d 147, 153 (E.D.N.Y.,

2020), the Court found that the holding in *Afyare* did not apply when analyzing a venture in a civil

context "because of the inherent differences between civil and criminal liability" and "because

Congress intended to broaden the behavior that can form the basis of civil liability" when it amended

the TVPRA in 2008. A venture "need not be primarily a sex-trafficking venture and the civil defendant

itself need not have committed a criminal violation of Section 1591." *G.G. v. Salesforce.com, Inc.*, 76

F.4th 544, 559 (7th Cir. 2023). The court in *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F.Supp.3d 959,

971 (S.D. Ohio 2019) held that the plaintiff had alleged sufficient facts to show that the defendants

had participated in a venture simply because the defendants had rented rooms to people they knew or

should have known were engaged in sex trafficking. Here, Scarlett has alleged that Defendant Palmer

procured her to work day and night with Gaiman, who she knew was a sexual predator and was at

least reckless as to the risk Gaiman posed to Scarlett.

2.   Palmer knew or should have known the venture involved Sex Trafficking.

Beneficiary liability under Section 1595 will only attach if the defendants "knew or should have

known" that the venture was engaged in sex trafficking. 18 U.S.C. § 1595(a); *G.G.*, 76 F.4th at 555. To establish constructive knowledge, a plaintiff must plausibly plead that the defendant "had constructive knowledge that a venture generally has violated Section 1591." *Doe A.L.G. v. Wyndham Hotel & Resorts, Inc.*, No. 1:24-cv-00285-RP, 2024 U.S. Dist. LEXIS 212384, at *9 (W.D. Tex. Nov. 21, 2024). This "should have known" language is a negligence standard, which "does not require evidence of actual knowledge or conspiracy between Defendants and the trafficker." *Doe K.E.C. v. G6 Hosp., LLC*, 750 F. Supp. 3d 719, 736 (E.D. Tex. 2024).

As alleged in Plaintiff's Complaint and stated previously herein, Palmer knew of Gaiman's pattern of sexual misconduct with other women. Palmer knew of Gaiman's sexual predilections and need to humiliate female partners with or without their consent. Palmer knew Scarlett was a sexual abuse survivor who had suffered mental health challenges in the past. Palmer knew of the danger Gaiman posed to Scarlett. Palmer told Gaiman of Scarlett's mental health challenges. But Palmer failed to provide any information to Scarlett about the risk Gaiman posed to her.

Palmer enticed, recruited, harbored, obtained, transported, and provided Scarlett to Gaiman knowing that he had committed sexual misconduct with other women, knowing that he posed a danger to Scarlett, and knowing about Scarlett's mental health issues as a result of prior sexual assault. This is confirmed by Palmer's own words when she told Gaiman, he could not have "this one". Palmer's conduct is, at a minimum, negligent and Scarlett's allegations establish that Palmer knew or should have known that her venture would result in sexual traffic conduct in Section 1591.

## II.   **Plaintiff's § 1589 Civil Conspiracy Claim is Well-Pled.**

18 U.S.C. § 1589 was intended to broaden the punishable conduct under the [TVPRA] beyond [what] constitutes involuntary servitude. *Baldia v. RN Express Staffing Registry LLC*, 633 F. Supp. 3d 693, 704 (S.D.N.Y. 2022). "The fundamental purpose of § 1589 is to reach cases of servitude achieved through *nonviolent* coercion — namely serious harm, the threat of serious harm, or the abuse or

threatened abuse of legal process." *Baldia*, 633 F. Supp. 3d at 705; 18 U.S.C. § 1589(c)(2)(emphasis added). The TVPRA defines "serious harm" as any harm, whether physical or nonphysical, including psychological, financial, or reputational harm which includes the withholding of basic necessities. *Paguirigan v. Prompt Nursing Emp't Agency LLC*, 286 F. Supp. 3d 430, 437 (E.D.N.Y. 2017); *Burrell v. Staff*, 60 F.4th 25, 38 (3d Cir. 2023); *Baldia*, 633 F. Supp. 3d at 705.

Palmer is correct that Scarlett does not claim that Palmer engaged in the use of force, restraint, or threats of force to compel Scarlett to provide labor and services. Indeed, the Complaint specifically alleges that "Palmer knowingly benefitted from Gaiman's exploitation of Scarlett, knowing or in reckless disregard of the fact that Gaiman was obtaining Scarlett's sexual acts and childcare by means of a pattern of conduct intended to cause Scarlett to believe that if Scarlett did not perform such labor and services, Scarlett would suffer serious harm or physical restraint." Dkt 1. *at* ¶ 287. Contrary to Palmer's assertions, however, to be liable under 18 U.S.C. § 1589, a defendant need not have personally used force, restraint, or threats of force to compel plaintiff to provide free labor and services. It is sufficient that the defendant "knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services" in violation of 18 U.S.C. § 1589(a). 18 U.S.C. § 1589(b).

### A.    Palmer preyed upon Plaintiff's economic status to coerce her to provide free labor

A defendant may be held liable under 18 U.S.C. § 1589, when the defendant preys "upon some…known objective conditions that make the victim especially vulnerable to pressure." *Muchira v. Al-Rawaf*, 850 F.3d 605, 618 (4th Cir. 2017). "When considering whether an employer's conduct was sufficiently serious to coerce the victim to provide labor or services against her will, the Court must also 'consider the particular vulnerabilities of a person in the victim's position.'" *Baldia*, 633 F. Supp. 3d at 705. "The correct standard is a hybrid '[and] requires [that the] victim's 'acquiescence be objectively reasonable under the circumstances.'" *Id.*

Palmer targeted Scarlett and used her economic status to coerce her into providing free labor. Palmer knew that Scarlett was exceptionally vulnerable economically. In Scarlett's Complaint, she specifically alleges that Palmer knew that Scarlett was economically insecure and unhoused. Dkt. 1 at ¶¶ 29-30. Palmer knew that providing Scarlett with basic necessities so far from Scarlett's support systems would put Scarlett into a position where she was trapped providing labor and services for Palmer and Gaiman. *Id.* at ¶¶ 111-116. Although Palmer agreed to provide payment to Scarlett, Palmer failed to pay knowing Scarlett's economic status would keep her reliant on Palmer and Gaiman. *Id.* at ¶¶ 119-122. Further, Gaiman promised that he could use his tremendous industry influence to promote her writing career should she accept the position with Palmer. *Id.* at ¶ 117. Palmer knew or should have known that Gaiman had made promises to advance Scarlett's career in exchange for free labor and services. *Id.* at ¶ 117. Scarlett's economic status made her uniquely susceptible to Palmer and Gaiman's coercion. Under the circumstances, promises to provide housing, income, and career advancement made Scarlett's acquiescence to provide her labor and services objectively reasonable. Moreover, Palmer knew or recklessly disregarded the fact that Gaiman was likely to assault Scarlett while she was isolated from her support systems as is evidenced by her communications to Gaiman. Palmer knew this would prevent Scarlett from being able to leave. *Id.*, at ¶¶ 287.

**B.     Scarlett was unable to escape her position with Palmer.**

Palmer attempts to suggest that Scarlett was free to leave her position at any time and, thus, was not coerced into providing free labor and services. A successful TVPRA claim does not require that plaintiffs be kept under "literal lock and key." *Chesler v. Chesler*, No. 25-cv-20-SM-AJ, 2025 U.S. Dist. LEXIS 88360, at *13 (D.N.H. May 5, 2025). Even if "the Plaintiff may have been able to come and go as she pleased from the home does not mean the Defendants' [sic] were not engaging her in unlawful forced labor." *Chesler*, 2025 U.S. Dist. LEXIS 88360, at *13 (quoting *Guobadia v. Irowa*, 103 F. Supp. 3d 325, 335 (E.D.N.Y. 2015)).

Palmer argues that, since Scarlett traveled between Palmer and Gaiman's houses, left Waiheke Island, stayed at a hotel, and stayed with friends living in the area, she was not engaged in coercing unlawful forced labor under 18 U.S.C. § 1589 from Scarlett. Palmer's interpretation of the factual background lacks any temporal analysis. Namely, Palmer fails to acknowledge how and why Scarlett was eventually able to leave Waiheke Island, stay at a hotel, and find other housing accommodations.

Although it is true that Scarlett was required to travel from Palmer's home to Gaiman's home to perform labor and services, Scarlett was not provided payment for her services. Dkt. 1 at ¶¶ 207-208. She could not simply leave her position with Palmer or leave Waiheke Island. Scarlett could not afford housing, could not easily afford transport off the island, could not afford food. *Id.* at ¶¶ 204-206. Waiheke Island is a remote island that requires $40 NZD to travel to and from. *Id.* at ¶ 25. It is only after Scarlett told Palmer about Gaiman's sexual assaults that Palmer returned Scarlett to Auckland. Once there, however, Palmer exploited Scarlett's economic vulnerability by discouraging her from seeking out other work, thereby maintaining her economic dependance on Palmer in an attempt to keep Scarlett trapped until Gaiman returned from his trip to Scotland. *Id.* at ¶ 226. In this regard, Scarlett's situation was analogous to that of the plaintiffs in *Nunag-Tanedo v. E. Baton Rouge Par. Sch. Bd.*, 790 F. Supp. 2d 1134, 1144 (C.D. Cal. 2011), who were unable to leave their employment because doing so would cause them financial ruin. It was only after Scarlett's stay in respite care in Auckland that Scarlett was forced to find other accommodations and employment opportunities. *Id.*, at ¶¶ 229-234. Scarlett was dependent upon Palmer for transportation away from Waiheke Island and housing upon her return to Auckland.

**III.     Plaintiff's § 1590(a) and § 1595(a) Civil Conspiracy Claim is Well-Pled.**

Sections 1590 and 1595 of title 18 of the United States Code provide a civil remedy against a party who "knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services in violation of this chapter...." Section 1590 requires a showing that defendant

employed any of the "means" identified in § 1589. *Velez v. Sanchez*, 754 F. Supp. 2d 488, 498 (E.D.N.Y. 2010) (*vacated in part on other grounds*). Palmer argues that Scarlett fails to establish a plausible claim for trafficking under sections 1590 and 1595 because her Complaint contains no allegations that Palmer "recruit[ed], harbor[ed], transport[ed], provid[ed], or obtain[ed]" Scarlett with the knowledge that Gaiman would force her to engage in forced labor or commercial sex. *Motion*, p. 18.

To the contrary, the Complaint contains these exact allegations. As mentioned above, Palmer knew that Gaiman had a pattern of sexual misconduct with other women, to such an extent that she anticipated and expected Gaiman to sexually abuse, humiliate, and forcibly rape Scarlett. Dkt. 1. at ¶¶ 15, 85-99. This is demonstrated by the fact that Palmer specifically told Gaiman that he could not have Scarlett. *Id.* at ¶¶ 85, 87. There are sufficient allegations in the Complaint to give rise to the inference that Palmer knew that Gaiman had engaged in sexual misconduct in the past, and would force Scarlett to engage commercial sex, if he was given the chance. *Id.* at ¶¶ 85-99. Palmer nevertheless targeted and recruited Scarlett to become a babysitter for her and Gaiman's child, a job that would position Scarlett to spend time alone with Gaiman at his separate residence. *Id.* at ¶¶ 36-39. With full knowledge of Scarlett's vulnerability, *id.* at ¶¶ 19-35, as well as knowledge of Gaiman's sexual misconduct and tendencies, *id.* at ¶¶ 15, 90-91, Palmer eventually offered Plaintiff a full-time job as a live-in nanny, promising her compensation and housing, and encouraging her to leave her current employment. *Id.* at ¶¶ 36-37, 108-120. Palmer presented Scarlett to Gaiman in a state of maximum dependency and vulnerability—a state she knew or should have known would entice Gaiman. *Id.*, ¶99. In providing Plaintiff a job and then withholding payment, Palmer recruited, enticed, solicited, provided, and obtained another victim for Gaiman, and through coercion, fraud, and threats of homelessness and joblessness, thrust Plaintiff into forced labor and commercial acts of sex. *Id.* at ¶¶ 108-211. As an economic hostage with no money, she was raped, forced to babysit, and had no where to go. Therefore, the facts alleged in the Complaint provide a plausible claim of trafficking against

Defendant Palmer under 18 U.S.C. § 1590(a) and 18 U.S.C. § 1595(a).

**IV.    Plaintiff's § 1594 and § 1595(a) Civil Conspiracy Claim is Well-Pled.**

Under Section 1594(b), "whoever conspires with another to violate section 1581, 1583, 1589, 1590, or 1592 shall be punished in the same manner as a completed violation of such section." 18 U.S.C. § 1594(b); *Bates v. Sequel Youth & Family Servs., LLC*, 2024 U.S. Dist. LEXIS 118421, at *32 (N.D. Ala. July 3, 2024). For there to be a conspiracy under this statute, there must be an agreement to violate the prohibition on forced labor. *Bates*, 2024 U.S. Dist. LEXIS 118421, at *32. To plead a conspiracy claim, it is not necessary to allege that each defendant knew every essential detail or participated in every stage of the conspiracy; instead, plaintiffs must only plead that defendants "knew of the conspiratorial goal and that [they] voluntarily participated in helping to accomplish that goal." *Id.* While mere presence or association with other persons involved in a criminal enterprise is not sufficient to prove participation in a conspiracy...the essential elements of a conspiracy can be proven by inference from the actions of the actors or by circumstantial evidence." *Id.*

Here Palmer conspired with Gaiman on the prohibition of forced labor in violation of both 18 U.S.C. 1589 and 18 U.S.C. 1590. 18 U.S.C. 1589(a) states, "Whoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means… (2) by means of serious harm or threats of serious harm to that person or another person." 18 U.S.C. § 1589(c)(2) states, "the term 'serious harm' means any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same."

In *Muchira v. Al-Rawaf*, 850 F.3d 605, 618-19 (4th Cir. 2017), the court analyzed whether the complaint sufficiently alleged a violation of 18 U.S.C. 1589, and found that Section 1589 is intended for cases where traffickers threaten harm to third persons, restrain their victims without physical violence or injury, or threaten dire consequences by means other than overt violence. Citing *United*

*States v. Dann*, 652 F.3d 1160, 1170 (9th Cir. 2011), the court further found that when considering whether an employer's conduct was sufficiently serious to coerce the victim to provide labor or services against her will, the factfinder must also "consider the particular vulnerabilities of a person in the victim's position." Citing *United States v. Rivera*, 799 F.3d 180, 186 (2d Cir. 2015).

Palmer knew of Scarlett's prior sexual abuse and mental health problems before obtaining her services. Palmer knew that Scarlett was having financial problems, was penniless and homeless Palmer knew of Gaiman's history of sexual misconduct with other women before enticing Scarlett to leave Auckland and travel to the island of Waiheke for nanny services. Palmer knew that Gaiman would seriously harm Scarlett. Palmer was clearly aware of the danger Gaiman posed to Scarlett but said nothing to Scarlett about her concerns related to what Gaiman would do to her. Palmer and Gaiman intentionally withheld Scarlett's pay and intended to have Scarlett trapped, vulnerable, and penniless in order to leave Scarlett without a real chance to defend herself or escape.

With this knowledge, Palmer enticed and recruited Scarlett to work for her and Gaiman as a nanny in exchange for an empty promise of compensation and a place to live. Scarlett was not paid for her labor and Palmer received a financial benefit of uncompensated childcare labor while Scarlett was subjected to sexual exploitation. Scarlett was forced to participate in sexual acts because if she refused, she would become homeless and unemployed, because Palmer encouraged Scarlett to leave her existing job. Palmer and Gaiman knew that Scarlett was unable to financially leave the island and escape. Palmer knew or recklessly disregarded the fact that Gaiman would sexually assault Scarlett.

18 U.S.C. § 1590(a) states that whoever knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services in violation of this chapter is a violation under the TVPRA. In *Martinez v. Calimlim*, 651 F.Supp.2d 852 (E.D.Wis.2009), the court found that a victim of a criminal scheme to obtain forced labor and to harbor alien fugitive for private financial gain sufficiently stated a civil claim against the family that perpetrated scheme under the criminal statute

prohibiting trafficking with respect to involuntary servitude or forced labor by alleging that perpetrators assisted their parents in harboring victim for purpose of extracting forced labor from victim. Here, Scarlett has similarly alleged that Palmer assisted Gaiman by recruiting, harboring, and obtaining Scarlett's services for forced uncompensated labor and forced sexual acts with Gaiman.

Palmer befriended Scarlett in Auckland and enticed and recruited her to come to Waiheke Island to provide nanny services. Palmer harbored Scarlett in her home. Palmer used Scarlett for nanny services when Palmer knew or, at least, should have known that Gaiman was sexually abusing Scarlett. Palmer did this while withholding payment for Scarlett's labor, while Scarlett was at Gaiman's mercy.

Scarlett's allegations are sufficient under the law to establish that Palmer was in a conspiracy with Gaiman to obtain uncompensated forced labor from Scarlett. Scarlett has sufficiently plead that Palmer recruited and harbored her in exchange for her receipt of a financial benefit from Scarlett's uncompensated forced labor with the threat of serious psychological and financial harm for Scarlett. Scarlett has established a conspiracy in violation of 18 U.S.C. 1594(b) and Defendant Palmer's Motion to Dismiss should be denied.

## V.    Plaintiff's Negligence Claim is Well-Pled.

Under Massachusetts law, a plaintiff seeking to hold a defendant liable in negligence must establish that the defendant owed the plaintiff a particular duty of care, that he breached it and that the breach harmed the plaintiff. *Beal v. Broadard*, No. SUCV2002-05765-C, 2005 Mass. Super. LEXIS 125, at *7 (Feb. 4, 2005). Palmer contests, by and through her memorandum, that she owed any duty to plaintiff under Massachusetts law. Palmer does not contest the other elements of negligence. Scarlett will limit her response accordingly.

### C.    Palmer owed Scarlett a duty to protect her from Gaiman.

Normally, there is no duty to protect one from the criminal conduct of another. *Beal*, 2005 Mass. Super. LEXIS 125, at *7. However, a duty may arise where a special relationship exists between

the parties. *Id.* A duty finds its source in existing social values and customs. *Id.* Where, no statute establishes the duty claimed, a special relationship "is predicated upon a plaintiff's reasonable expectations and reliance that a defendant will anticipate harmful acts of third persons and take appropriate measures to protect the plaintiff from harm." *Id.*

Palmer misconstrues Scarlett's negligence claim. Palmer suggests that Scarlett is seeking to hold Palmer negligent simply because of Palmer's status as a wife and mother. Palmer further argues that she simply had no duty to control the conduct of Gaiman whom she claims is a third party.

The Complaint, however, expressly pleads that Palmer owed Scarlett a duty to protect her from Gaiman's sexual acts. Palmer created a special relationship with Scarlett by hiring Scarlett. Dkt. 1 at ¶¶ 111-116. As a part of Scarlett's employment, Palmer required that Scarlett provide her services on a live-in basis to Gaiman. *Id.* at ¶ 119. Scarlett has pleaded that Palmer knew of, or at least suspected, the danger Gaiman posed to Scarlett but chose to disregard her concerns. *Id.* at ¶ 15, 93. Scarlett had a reasonable expectation that Palmer was able to anticipate the harm that Scarlett suffered and take appropriate measures to protect her from that harm. Scarlett has pleaded sufficient facts for this Court to find that Palmer created a special relationship with Scarlett and, thus, owed a duty to Scarlett.

## VI.    The Court should retain supplemental jurisdiction over Scarlett's state law tort claim.

Palmer argues that in the event the Court were to dismiss Scarlett's TVPRA claim, the Court should dismiss Scarlett's state law claims. However, 28 U.S.C. § 1367(c)(3) states that the district courts "may" decline to exercise supplemental jurisdiction over a claim of subsection (a) if the district court has dismissed all claims over which it was original jurisdiction. Scarlett's common law tort claims are proper and timely pled. In the event the Court disagrees that Scarlett's TVPA claim, Scarlett requests the Court exercise its discretion to maintain its jurisdiction over her state law claims.

## CONCLUSION

For the foregoing reasons, the Court should deny the Motion.

By: ___/s/ Mitchell J. Matorin_____
Mitchell J. Matorin (BBO# 649304)
MATORIN LAW OFFICE, LLC
18 Grove Street, Suite 5
Wellesley, MA 02482
Tel: (781) 453-0100
mmatorin@matorinlawoffice.com

Thomas Neville (admitted *pro hac vice*)
Dylan Schmeyer (admitted *pro hac vice*)
Akiva M. Cohen (admitted *pro hac vice*)
KAMERMAN UNCYK SONIKER &
    KLEIN P.C.
1700 Broadway
New York, New York 10019
Tel: (212) 400-4930
tneville@kusklaw.com
dschmeyer@kusklaw.com
acohen@kusklaw.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on June 4, 2025, a true and correct copy of the foregoing Plaintiff Scarlett

Pavlovich's Response to Defendant Amanda Palmer's Motion to Dismiss for Failure to State a Claim

was filed through the CM/ECF portal, which will send electronic notification of this filing to all

counsel of record in the present action.

/s/ Mitchell J. Matorin
Mitchell J. Matorin