IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SCARLETT PAVLOVICH,<br>*Plaintiff*,<br><br>v.<br><br>AMANDA PALMER,<br>*Defendant*. | No. 1:25-cv-10263-NMG<br><br>Motion for Leave<br>to File Granted on<br>June 26, 2025 [D.E. 25] |

# DEFENDANT AMANDA PALMER'S REPLY IN SUPPORT OF
## MOTION TO DISMISS PLAINTIFF SCARLETT PAVLOVICH'S COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Daniel N. Marx, Esq. (BBO#674523)
William W. Fick, Esq. (BBO #650562)
Amy Barsky, Esq. (BBO#601111)
FICK & MARX LLP
24 Federal Street, 4th Floor
Boston, MA 02110
(857) 321-8360
DMARX@FICKMARX.COM
WFICK@FICKMARX.COM
ABARSKY@FICKMARX.COM

Dated: June 26, 2025

# TABLE OF CONTENTS

Introduction ........................................................................................................................................ 1

Argument .......................................................................................................................................... 1

I.      The Complaint fails to adequately allege "sex trafficking" in violation of the TVPA. ....... 1

         A.      Plaintiff fails to state a plausible claim of direct liability ....................................... 1

         B.      Plaintiff fails to state a plausible claim of beneficiary liability ............................. 2

II.     The Complaint fails to adequately allege "forced labor" in violation of the TVPA ........... 4

III.    The Complaint fails to adequately allege any negligence claim ........................................ 5

Conclusion ........................................................................................................................................ 5

Certificate of Service ........................................................................................................................ 6

**INTRODUCTION**

Plaintiff Scarlett Pavlovich claims that Defendant Amanda Palmer hired her to work as a babysitter, but Ms. Palmer did not pay Plaintiff as promised, and while Plaintiff was babysitting, Ms. Palmer's estranged husband, Neil Gaiman, sexually assaulted Plaintiff. Even accepting those allegations as true, they do not plausibly state a "sex trafficking" claim against Ms. Palmer under the TVPA. Ms. Palmer did not participate in, know about, or benefit from any alleged sexual assault. Nor do those allegations establish a "forced labor" claim. Ms. Palmer did not compel Plaintiff to continue babysitting; Plaintiff was free to quit her job, and after Plaintiff reported Gaiman's alleged assaults, Ms. Palmer helped her to leave. In trying to stretch the TPVA to reach Ms. Palmer, Plaintiff unfairly and inappropriately threatens all spouses, domestic partners, and co-parents with sweeping potential liability as both "sex traffickers," if their partners sexually assault a babysitter or housekeeper, and also as a "modern slavers," if they fail to pay for any domestic services on time and in full. This Court should reject Plaintiff's invitation to set such a novel and dangerous precedent.

**ARGUMENT**

**I.    The Complaint fails to adequately allege "sex trafficking" in violation of the TVPA.**

  **A.    Plaintiff fails to state a plausible claim of direct liability.**

Plaintiff argues Ms. Palmer is directly liable under the TVPA for "sex trafficking," as a knowing perpetrator, because Ms. Palmer allegedly "enticed" Plaintiff to babysit and made "false promises" that Plaintiff "would be paid" for her services, and because while Plaintiff was babysitting, Gaiman allegedly raped her. D.E. 23 at 4-5. Even accepting those allegations as true, they do not state a viable claim of "sex trafficking" against Ms. Palmer. Put simply, hiring a person who gets sexually assaulted on the job by someone else is not "sex trafficking."

Plaintiff concedes 18 U.S.C. § 1591(a)(1) imposes directly liability for "sex trafficking"

1

only on a person who knows, or recklessly disregards, that a victim will be forced to engage in "a commercial sex act." D.E. 23 at 6. But the Opposition identifies no factual allegations in the Complaint that plausibly suggest (1) Plaintiff was forced to engage in any "commercial sex act" with Gaiman or (2) Ms. Palmer knew, or recklessly disregarded, that possibility.

In a misguided effort to frame her "sexual assault" allegations against Gaiman as a "sex trafficking" claim against Ms. Palmer, Plaintiff asserts Ms. Palmer "knew or recklessly disregarded . . . that Gaiman had a history of conduct that included force or fraud to commit non-consensual acts of *sexual abuse*." *Id.* at 6. As a matter of law, however, not every instance of "sexual abuse" is a "commercial sex act," *McLeod v. Fessenden Sch.*, 624 F. Supp. 3d 36 (D. Mass. 2022), which the TVPA defines as "any sex act, on account of which anything of value is given to or received by any person," 18 U.S.C. § 1591(c)(3). Notably, Plaintiff ignores *McLeod*, and the Complaint fails to allege any "commercial sex" with Gaiman.

Further, even if Ms. Palmer knew that Gaiman "was likely to make [Plaintiff] his victim," D.E. 23 at 7, the Complaint fails to allege Ms. Palmer knew Gaiman previously had "commercial sex" with a babysitter or anyone else—or that he would offer or give anything of value (paid employment, free housing, or career advice) to Plaintiff in exchange for having sex with him. *See id.* (summarizing vague allegations about Gaiman's "pattern of sexual misconduct"). To the contrary, the Complaint plainly states Ms. Palmer hired and promised to pay Plaintiff only to babysit, not to have sex with Gaiman.

**B.     Plaintiff fails to state a plausible claim of beneficiary liability.**

Plaintiff also contends Ms. Palmer is liable under the TVPA, because she knowingly benefited from her participation in a sex-trafficking venture with Gaiman. D.E. 23 at 8-11. Again, even accepting the factual allegations as true, they fail to state a plausible claim. Being married to or co-parenting with a partner who sexually assaults a babysitter is not "sex trafficking."

2

Plaintiff concedes there can be no beneficiary liability under 18 U.S.C. § 1591(a)(2) without a "venture" that itself has violated the TVPA. But the Opposition does not clearly identify the alleged venture, and it suggests only one possibility: "Palmer shares a child with Gaiman" and "procured [Plaintiff]'s services to provide childcare." D.E. 23 at 10; *see id.* at 11 (referring to Ms. Palmer's "familial relationship with Gaiman"). But marriages, romantic relationships, and co-parenting situations are not "ventures," *Doe v. Gupta*, No. 3:22-cv-1122, 2023 U.S. Dist. LEXIS 57639, at *18 (N.D. Ohio Sept. 27, 2023), which the TPVA defines to mean business arrangements, *see Ricchio v. McLean*, 853 F.3d 553, 556 (1st Cir. 2017); *see also Doe v. Red Roof Inns, Inc.*, 21 F.4th 714, 724-25 (11th Cir. 2021) (interpreting "venture" as "common undertaking or enterprise involving risk and potential profit").

Rather than reckon with *Gupta*, Plaintiff relies on inapposite cases, such as *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 971 (S.D. Ohio 2019), about commercial dealings between professional pimps and hotel operators. *M.A.* follows *Ricchio*, which Plaintiff also ignores. The disturbing evidence in *Ricchio* sharply conflicts with the inadequate allegations about Ms. Palmer in this case, which fail to plausibly establish that she knowingly benefitted from her own personal participation in any sex-trafficking venture. Unlike the wife in *Ricchio*, Ms. Palmer did not knowingly rent a room to Gaiman so that, for their mutual profit, he could force Plaintiff into prostitution. Rather at the time of the alleged sexual assaults, Ms. Palmer was married to, but separated from, Gaiman; they did not share a home or operate any business together, and Ms. Palmer knew nothing about the assaults, much less any "commercial sex act" between Plaintiff and Gaiman.

Finally, in asserting a claim for beneficiary liability, the Opposition fails to explain how Ms. Palmer "knowingly benefitted" from her estranged husband's alleged sexual assault of their

3

babysitter. The accusation is patently absurd. Ms. Palmer gained nothing from those supposed assaults, and according to the Complaint, Plaintiff stopped babysitting because of them.

## II.     The Complaint fails to adequately allege "forced labor" in violation of the TVPA.

Plaintiff argues Ms. Palmer obtained her "forced labor," in violation of § 1589, because she "preyed on" Plaintiff's "economic status" and other personal "vulnerabilities." D.E. 23 at 13-14. Tellingly, however, the Opposition fails to cite a single case to support that legal claim. It also ignores the many cases that have consistently held "taking a job out of . . . desperation is not the same as being coerced through actual harm or the threats of harm." *Doe v. Apple, Inc.*, No. 1:19-cv-03737 (CJN), 2021 U.S. Dist. LEXIS 237710 (D.D.C. Nov. 2, 2021), *aff'd*, 96 F.4th 403 (D.C. Cir. 2024); *see also Taylor v. Salvation Army Nat'l Corp.*, 110 F.4th 1017, 1031 (7th Cir. 2024) (holding loss of food, clothing, and shelter benefits did not constitute "serious harm"). Even accepting her factual allegations as true, Plaintiff was no more "desperate" than the child laborers in *Doe* or the homeless men in *Taylor*; and her potential loss of pay and housing would have been a natural consequence of quitting her job, not proof that Ms. Palmer obtained her "forced labor."

Plaintiff concedes she was not kept in "squalid or otherwise intolerable living conditions" that amounted to modern slavery. *Muchira v. Al-Rawaf*, 850 F.3d 605, 618-19 (4th Cir. 2017). She admits she could come and go from Ms. Palmer's and Gaiman's separate houses, communicate freely with family and friends, and quit her job at any time. Unlike *Nunag-Tanedo v. East Baton Rouge Parish School Board*, 790 F. Supp. 2d 1134 (C.D. Cal. 2011), on which Plaintiff mistakenly relies, this case involves no financial manipulation or repeated threats to compel Plaintiff to continue babysitting. There, when the foreign plaintiffs tried to quit their teaching jobs, the defendants engaged in a fraudulent scheme to demand $10,000 in additional fees, and they also threatened to sue the plaintiffs, let their visas expire, and have them deported. *See id.* at 1146. The Complaint in this case makes no such allegations. *Compare United States v. Dann*, 652 F.3d 1160,

4

1162 (9th Cir. 2011). Indeed, it states that when Plaintiff reported Gaiman's alleged sexual assaults, Ms. Palmer helped her to leave Waiheke and to find other housing in Auckland.

Further, even if Plaintiff felt trapped as the babysitter for Ms. Palmer and Gaiman, such an allegation would not plausibly suggest that Ms. Palmer "intended [Plaintiff] to believe that [serious] harm would befall her," if she quit her job. *Id.* at 1170. Absent such specific intent, Ms. Palmer cannot be held liable for forced labor under the TVPA.

### III. The Complaint fails to adequately allege any negligence claim.

Plaintiff concedes that, under Massachusetts law, there is no general duty "to control the conduct of a third person as to prevent him from causing physical harm to another." *Lev v. Beverly Enters.*, 457 Mass. 234, 242 (2010). She argues, however, that Ms. Palmer "created a special relationship with [Plaintiff] by hiring [her]" as a babysitter. D.E. 23 at 20. That conclusory allegation is insufficient as matter of pleading, and it is incorrect as a statement of law. All employers do not have legal duties to protect all employees from the potential criminal or wrongful conduct of all third-parties, even if an employer has reason to believe a particular third-party may pose some danger. That notion turns the concept of "negligent supervision" on its head: under Massachusetts law, under certain circumstances, an employer has an obligation to protect a third-party from its own employee, *see Foster v. Loft, Inc.*, 26 Mass. App. Ct. 289, 291 (1988) (affirming judgment against employer which was sued for negligent hiring and retention of bartender who assaulted customer), but not the other way around. Again, Plaintiff cites no cases to support her novel tort theory, and there is none. Nor does Plaintiff provide any compelling reason to justify this Court's exercise of supplemental jurisdiction over Plaintiff's state-law claim. D.E. 23 at 20 (noting only that her "common law tort claims are proper and timely pled").

### CONCLUSION

For the foregoing reasons, this Court should dismiss the entire Complaint with prejudice.

5

                Respectfully submitted,

                **AMANDA PALMER**

                By her attorneys,

                */s/ Daniel N. Marx*
                Daniel N. Marx, Esq. (BBO#674523)
                William W. Fick, Esq. (BBO#650562)
                Amy Barsky, Esq. (BBO#601111)
                FICK & MARX LLP
                24 Federal Street, 4th Floor
                Boston, MA 02110
                (857) 321-8360
                DMARX@FICKMARX.COM
                WFICK@FICKMARX.COM
                ABARSKY@FICKMARX.COM

Dated: June 26, 2025

## CERTIFICATE OF SERVICE

    I certify that this document and any attachments filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on June 26, 2025.

                */s/ Daniel N. Marx*
                Daniel N. Marx