# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

SCARLETT PAVLOVICH,

    Plaintiff,

v.

Case No. 25-CV-00078-jdp

NEIL GAIMAN and
AMANDA PALMER,

    Defendants.

## DECLARATION OF DAVID PH JONES KC
## IN SUPPORT OF MOTION TO DISMISS

I DAVID PAUL HEARMON JONES, KING'S COUNSEL, hereby declare:

1. I am a lawyer practising in New Zealand. I was instructed to act for Neil Gaiman after the Plaintiff, Ms Pavlovich, made a criminal complaint to the New Zealand Police about what she claimed were sexual assaults by Mr Gaiman on her. The assaults were said to have occurred in February 2022 when they were both in this country.

2. I was in direct contact with the officer overseeing the investigation, Detective Sergeant Ewen Settle of the Auckland Police. He advised that Ms Pavlovich had made an extensive Evidential Recorded Interview over several hours. The police also had messaging between Ms Pavlovich and Mr Gaiman which occurred both during the time the sexual contact was occurring as well as afterwards. Some of this messaging is included in Mr Gaiman's brief in support of the motion to dismiss.



1

3. Under New Zealand law, a two test approach is taken to complaints of alleged criminal conduct made to the police and any decision to prosecute (or not). One test is evidential sufficiency and the other is the public interest in taking the prosecution. Plainly it is in the public interest to prosecute any sexual assault so that test must have been satisfied in this case. Under New Zealand law, the uncorroborated evidence of a complainant on its own is sufficient to found a prosecution and a conviction. However, in this case the investigation did not result in a prosecution by the police and the case was closed. It is apparent to me that the evidential sufficiency test, which incorporates both credibility and reliability issues, was not met.

4. I have reviewed the complaint made by Ms Pavlovich in these civil proceedings taken in the United States. The complaint covers largely the same subject matter that her criminal complaint did. There are some variations on what she says occurred in certain respects but the incidents are readily recognisable as being the same as those of her criminal complaint.

5. By way of background, I am a lawyer admitted in the High Court of New Zealand in 1983 and I hold a current practising certificate. I graduated from Auckland University with an honours degree in law (LLB Hons). I began my career in February 1982 as a prosecutor at Meredith Connell & Co. in Auckland, the office of the Crown Solicitor. All serious crime in the Auckland area was prosecuted through this office. In June 1987, I commenced practice as a barrister sole and was appointed King's Counsel in 2005.

2

6. I have extensive experience as senior counsel in matters involving serious crime and regularly appear at all levels in New Zealand Courts. I am also a member of the Auckland Crown Solicitor's Prosecution Panel and previously served as a member of the Serious Fraud Office Prosecution Panel for over 10 years. I also have a significant civil practice in New Zealand, which comprises litigation under the Criminal Proceeds (Recovery) Act as well as general civil, commercial and corporate litigation.

7. I have appeared as lead counsel in literally hundreds of criminal jury trials. I have also appeared as lead counsel in many civil trials over the last 40 years. Civil trials in this country are Judge only hearings, the notable exception being defamation cases (there is an election of a Judge or jury). Tortious claims are heard by a Judge sitting alone.

8. I have reviewed the Plaintiff's Complaint, Mr Gaiman's pending Motion to Dismiss, the Declaration of Jack Wass and the report that Mr Wass attached to his declaration filed in opposition to Mr Gaiman's Motion to Dismiss.

9. Before embarking on any discussion of the legal position in New Zealand in terms of remedies Ms Pavlovich has in this country, I need to provide background and a level of perspective. One could be forgiven, after reading the statement of Mr Wass, that a complainant in a sexual abuse case in New Zealand had no civil rights of redress in this country. That is quite wrong. New Zealand is a sovereign nation with a legal system similar to that of the United Kingdom, but which is completely autonomous. Critically, conduct that occurs in New Zealand, criminal or



3

civil, is subject to its laws. All persons within this country are also subject to its laws and the courts here have jurisdiction over all such conduct.

10. Ms Pavlovich obviously acknowledges this because she made a complaint to the New Zealand Police. She has not, however, as I understand it, taken any steps to obtain redress in a civil context in this country. Instead, she has pursued a civil complaint in the United States, a venue wholly unconnected to both the alleged conduct and the applicable law.

11. Mr Wass provides an opinion on what he says is the legal position in this country and ultimately concludes that it would "not be possible to bring civil proceedings" against Mr Gaiman in New Zealand for the claims the plaintiff alleged in the Complaint she filed in the United States court. That is in some senses a correct statement but is substantively incorrect. By this I mean that the law in the US is different to that in New Zealand in some respects and as a consequence, claims based on American statute would have no application here. That is simply a reflection of the way laws are framed in individual countries. A person in the New Zealand jurisdiction cannot be subject to the domestic laws of other countries.

12. By way of example, theft in New Zealand has a specific statutory definition and each element must be established beyond reasonable doubt. A definition taken from US law has no application here. Equally, a defence provided by statute here has no application to a theft committed in the US.

13. In the civil jurisdiction, much of New Zealand law is derived from the common law as opposed to statute. However, a level of statutory codification has



4

occurred to simplify the civil process in a variety of areas of civil law. This is a process undertaken by our parliament, normally after extensive consultation with legal bodies and the review of the law in other jurisdictions. The accident compensation regime was instituted in this country over 50 years ago following an extensive report by a (former) Court of Appeal Judge.

14. In terms of the present case, what Mr Wass states is the legal position in this country about complainants in sexual cases not being able to seek civil redress in court is incorrect. To be clear, a sexual assault complainant has redress available in both the criminal and civil jurisdictions in this country.

15. Ms Pavlovich has made her criminal complaint to the New Zealand Police. If that had proceeded and resulted in a conviction, she would have been able to seek payments for emotional harm and reparation as part of the sentencing process. Given her criminal complaint has not resulted in any prosecution, that avenue has been exhausted. Put simply, she had redress by resort to the criminal process but that came to nothing. That is not a reflection on the legal system here; rather it is the result of the assessment made of the validity of Ms Pavlovich's complaint by the New Zealand Police and the decision not to pursue the investigation further.

16. Her civil remedies are twofold: a claim under the accident compensation legislation for compensation and a claim in tort taken through the courts for damages that are other than compensatory. I will explain these issues further shortly but it appears on the information available to me that Ms Pavlovich has either not taken



5

any steps under the accident compensation legislation for compensatory payment or has but has not disclosed this.

17. Whatever the position, it is apparent that Ms Pavlovich's decision to pursue claims against Mr Gaiman in a US court is wholly strategic. The United States has no connection with either the conduct she alleges occurred nor the applicable law. Notwithstanding, she, a New Zealand citizen, has left this country and is apparently looking to permanently relocate in Scotland. In New Zealand, her ability to pursue civil recourse (and criminal) is governed by New Zealand law. By filing suit in the US, Ms Pavlovich is attempting to circumvent the legal process in this country and advance her complaint in what she undoubtedly considers is (for her) a more favourable jurisdiction in terms of financial reward.

18. The accident compensation regime has been embedded in New Zealand law for over half a century. Over 50 years ago, the New Zealand parliament enacted legislation that enables anyone, citizen or visitor, to claim for loss occasioned by personal injury. A government body, the Accident Compensation Corporation, oversees this scheme. It is a "no fault" regime designed to compensate the person suffering the "accident" regardless of who may have caused it and whether they have resources to pay. A key feature is the ability of a person to make a claim, for that to be actioned promptly and payment made. Both direct and indirect loss/costs can be claimed.

19. Ms Pavlovich would undoubtedly know of this as would her legal advisors. Taxpayers in New Zealand are levied to contribute to the fund: it is an



6

integral part of the legal framework of this country. Pursuing legal action in the United States circumvents the statutory framework in New Zealand that has been in place for decades. In my view, this must be an abuse of process. The Plaintiff clearly does not wish to operate under that framework because she (and her legal advisors) believe her remedies in New Zealand would be limited. However, the Plaintiff has a number of adequate remedies available to her under New Zealand law.

20. First, the Plaintiff has the right to seek financial compensation for her alleged injuries under the (latest iteration of) New Zealand Accident Compensation Act 2001 (the "ACC Act"). Under the ACC Act, the term "accident" is broadly defined to cover intentionally tortious conduct. An assault would be governed by the ACC Act. In this case, Plaintiff would be entitled to seek compensatory damages under the ACC Act for the alleged injuries that Mr Gaiman caused her.

21. The legislation is "no fault" in that no causal link need be established to the conduct of a particular person to be able to claim. The essence of the law is to address the loss, injury and/or damage suffered by the claimant howsoever it was caused.

22. Secondly, the Plaintiff has remedies outside the ACC Act's statutory scheme. While the ACC Act covers compensatory damages, a plaintiff is able to sue separately for exemplary damages. Based on the Plaintiff's allegations here, she could pursue a civil claim against Mr Gaiman seeking exemplary and/or other categories of damages arising from his alleged misconduct towards the Plaintiff.



7

23. The best exposition of the law is in the (New Zealand) Supreme Court case of *Couch v Attorney General*.[1] As with the US, our Supreme Court is the highest court in the land and its cases articulate legal principles for general application in lower courts. We have one court system for the country: there is no state law. This means a judgment of any higher court is binding on lower courts with the Supreme Court being at the apex.

24. In *Couch*, the Court considered the difference between compensatory damages (which are covered by the ACC legislation) and exemplary damages (which are not). Exemplary damages were described in *Couch* in the following way: "The purpose of exemplary damages is to punish the defendant for outrageous conduct which has harmed the plaintiff and, by denouncing that conduct and marking it out for punishment, to deter the defendant from repetition and to deter others from behaving in a similar manner. The focus should therefore be on the character of the defendant's conduct, not on the loss or suffering of the plaintiff."[2]

25. Given the extent and nature of the allegations by the Plaintiff, exemplary damages would be available to the Plaintiff in New Zealand if she took a civil claim against Mr Gaiman, provided the conduct could be proved to the requisite standard.

26. An important distinction is what the ACC legislation actually covers but what can still be advanced in a civil claim. The legislation precludes claims for compensatory damages based on any tortious action for personal injury but not the



---

[1] *Couch v Attorney-General* [2010] NZSC 27.
[2] Ibid. at [58].

8

cause of action itself.[3] In other words, a cause of action for the tort of (sexual) assault (or any other tort) remains available and can be taken in a New Zealand court provided the remedy sought is something other than compensatory damages.

27. The ACC legislation is explicit on this. Section 319 of the Act provides:

> **319 Exemplary damages**
> (1) Nothing in this Act, and no rule of law, prevents any person from bringing proceedings in any court in New Zealand for exemplary damages for conduct by the defendant that has resulted in—
>    (a) personal injury covered by this Act; or
>    (b) personal injury covered by the former Acts.
> (2) The court may make an award of exemplary damages for conduct of the kind described in subsection (1) even though—
>    (a) the defendant has been charged with, and acquitted or convicted of, an offence involving the conduct concerned in the claim for exemplary damages; or
>    (b) the defendant has been charged with such an offence, and has been discharged without conviction under section 106 of the Sentencing Act 2002 or convicted and discharged under section 108 of that Act; or
>    (c) the defendant has been charged with such an offence and, at the time at which the court is making its decision on the claim for exemplary damages, the charge has not been dealt with; or
>    (d) the defendant has not, at the time at which the court is making its decision on the claim for exemplary damages, been charged with such an offence; or
>    (e) the limitation period for bringing a charge for such an offence has expired.
> (3) In determining whether to award exemplary damages and, if they are to be awarded, the amount of them, the court may have regard to—
>    (a) whether a penalty has been imposed on the defendant for an offence involving the conduct concerned in the claim for exemplary damages; and
>    (b) if so, the nature of the penalty.

---

[3] See for example *McGougan v DePuy International Limited* [2016] 2 NZLR at [69].

9

28.     Paragraph 87 of *Couch* states:

> *[86] ....Since Donselaar was decided Parliament has had several opportunities to include exemplary damages expressly within the bar and has not done so.*
>
> *[87] That must represent an acceptance of the Court of Appeal's conclusion that the policy of the accident compensation legislation is not undermined by permitting exemplary damages to be claimed in circumstances defined by the courts. This proposition is underlined by s 319 of the Act which was introduced into the legislation in 1998 to reverse the effect of the judgment of the Court of Appeal in Daniels v Thompson.*

29.     To summarise, Ms Pavlovich has two civil avenues of redress to pursue in New Zealand: under the ACC legislation for what would effectively be compensatory damages and through the courts for exemplary damages. It appears she has not attempted either.

30.     I should also add that having a remedy under the law does not mean the court would necessarily grant relief. Any claim would be subject to proof. The remedy is therefore legally available but the evidence has to be sufficient to establish the cause of action and that exemplary damages should be ordered.

31.     Third, the Plaintiff has remedies available to her under New Zealand criminal law as already stated. New Zealand also has a statutory criminal framework in this respect (which reflects TVPA principles[4]) and human trafficking is a specific crime in New Zealand under the Crimes Act 1961.[5] New Zealand ratified the United Nations Protocol to Prevent, Suppress and Punish Trafficking in Persons, Especially Women and Children (referred to as the "Palermo Protocol") in 2002, some 3 years before the United States did.

---

[4] Crimes Act 1961, ss 98B to 98F.
[5] Crimes Act 1961, s 98D.

32. The New Zealand Bill of Rights Act 1990 also enshrines the fundamental rights of persons in New Zealand including the freedom of movement and residence in this country. Such rights are enforceable by civil suit.

33. The limitation period for claims in tort is 6 years from the date of the tortious act. Ms Pavlovich is therefore well able to pursue a civil claim in New Zealand against Mr Gaiman for exemplary damages. She has instead opted to initiate a series of proceedings in various states in the United States.

34. It is concerning to me that the New Zealand legal system and process are being depicted as inadequate and unsuitable to deliver justice to Ms Pavlovich's claims. The evolution of New Zealand law has occurred over many years. Our higher courts regularly canvass decisions in other Commonwealth countries, the main ones being England, Canada and Australia. Cases from the United States are also considered where appropriate. The attempted circumvention of the laws of the land by Ms Pavlovich is unprincipled. The portrayal of New Zealand law as deficient is anathema to our legal system.

35. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 29 April 2025 at Auckland, New Zealand.

_____
DAVID PH JONES KC

11